[No. B045194. Second Dist., Div. Seven. Apr. 17, 1991.]

LIBERTY TRANSPORT, INC., Plaintiff and Respondent, v.
HARRY W. GORST COMPANY, INC., et al., Defendants and
Appellants.

**COUNSEL**

Wilson, Elser, Moskowitz, Edelman & Dicker, Patrick M. Kelly, Jonathon Sher and Lynda M. Sauer for Defendants and Appellants.

Mills & Schroeder and John Schroeder for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—Defendants and Appellants, Harry W. Gorst Company, Inc., and insurance companies, English and American Group PLC, Terra Nova, Excess Insurance Group and Bishopgate (insurance companies), appeal from a judgment entered after a jury verdict in favor of plaintiff and respondent, Liberty Transport, Inc. Because there is at least one cause of action free from error and supported by substantial evidence, and because appellants' other assignments of error do not warrant reversal, we affirm the judgment awarding contract, compensatory and punitive damages.

### FACTS AND PROCEEDINGS BELOW

On December 31, 1982, George Stevenson, an employee of respondent, Liberty Transport, Inc. (respondent), loaded a truck shipment of produce in Nogales, Arizona, to transport to New York. Mr. Stevenson received an advance of $1,000 for the trip. On January 1, 1983, Mr. Stevenson cashed a check and purchased fuel for the truck in Roswell, New Mexico. There was conflicting testimony as to whether Roswell was or was not on the ordinary route from Nogales to New York. Pat Hardin, president of respondent corporation, speculated Stevenson traveled to Amarillo, Texas, from Nogales, Arizona, to visit his family. However, Mr. Stevenson's family had moved from Amarillo to Florida and the telephone number in Amarillo had been disconnected as of January 1983.

Despite efforts with the local police, FBI, Texas Highway Patrol, relatives, various truck drivers and trucking companies, Mr. Stevenson was not located. He was still missing at the time of trial six and one-half years later.

On January 10, 1983, the tractor of the truck driven by Mr. Stevenson was found on fire in Mineral Wells, Texas. The Texas Highway Patrol reported the trailer, cargo and driver were missing.

Mineral Wells, Texas, was off the normal route to New York. Respondent immediately notified the local insurance agent of the loss. This agent in turn reported the loss to appellant, Harry W. Gorst Companies, Inc. (Gorst).

The insurance policy involved in this case provided coverage for stolen property, but excluded property stolen by an employee of the insured. This policy also afforded coverage for vandalism or malicious mischief, regardless of whether an employee of the insured vandalized the property.

Gorst acted as the insurance companies' agent in issuing the subject policy and in processing respondent's claim. Mr. Lemon, vice-president of

Gorst, assigned the Frontier Adjusting Agency to investigate the loss. An investigation of the tractor fire resulted in a determination the fire was deliberately set. The report concluded with two hypotheses: "1) The reported driver of this rig, has been kidnapped and/or murdered and the trailer and load sold and the tractor burned. 2) Mr. Stevenson is still at large and is responsible for the missing trailer and load as well as the fire in question." In February and March 1983, the insurance companies instructed Gorst to have a skip trace investigation conducted in an attempt to locate Mr. Stevenson. In response, Gorst instructed the Frontier Adjusting Agency to perform the skip trace and follow up on a forwarding address for Mr. Stevenson in Florida. Mr. Lemon of Gorst could not testify as to whether the skip trace search was ever done.

In March of 1983, the insurance companies were inclined to deny liability and requested local counsel, David Parsons (Parsons), to render a coverage opinion concerning the tractor and trailer claims. The matter was assigned to Mr. Parsons for review upon the suggestion of Mr. Lemon of Gorst.

In July of 1983, seven months after the claim was filed, Gorst was instructed by the insurance companies to issue payment to respondent with respect to the tractor claim. Gorst did make the payment to respondent but did not also communicate the fact the trailer claim was to be denied. Gorst did not deem it appropriate to relay this information to respondent because the insurance companies had retained counsel to advise and communicate on their behalf.

At the same time, Parsons was instructed to deny the trailer claim. However, Parsons failed to do so despite the insurance companies' instructions.

On October 21, 1983, Pat Hardin, on behalf of respondent, wrote to Mr. Lemon of Gorst to inquire as to the status of the trailer claim and to demand immediate payment. Mr. Lemon of Gorst forwarded this letter to the insurance companies in London without communicating with respondent. This prompted the insurance companies to instruct Parsons to deny the trailer claim immediately. During this period, respondent and respondent's insurance agent made telephonic inquiries of Gorst as to the status of respondent's claim. Despite knowledge the claim was to be denied, Gorst never communicated this information to respondent or its agent.

On April 4, 1984, 15 months after the claim was filed, Mr. Parsons sent a letter to respondent advising the company it had not met its burden of establishing the trailer had been stolen by a third party so as to bring the claim within the insuring clause of the policy. In addition, Parsons advised

respondent, based upon available information, the facts suggested if the trailer was stolen, it was stolen by Mr. Stevenson which would result in no coverage under the employee theft exclusion.

Respondent then retained counsel who wrote letters to Parsons challenging the propriety of the denial letter and demanding payment. Parsons never responded.

Respondent filed its original complaint on April 4, 1985, alleging causes of action for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud and violations of Insurance Code section 790.03 against Lloyd's of London, Horncastle, Crawford & West, Ltd. and Doe defendants 1 to 20, insurers and the broker for an insurance policy unrelated to the parties or policy involved in this case.[1] The erroneous insurance policy was attached to the original complaint. The original complaint was never served on any defendant.

On October 6, 1986, a second complaint was filed against appellants alleging the same causes of action. Attached to this complaint was the policy of insurance brokered by Gorst and issued by the insurance companies. Appellants were not served as Doe defendants designated in the first complaint.

At the conclusion of plaintiff's case, appellants moved for a nonsuit with respect to all noncontractual claims on the ground the second complaint was filed after the expiration of the applicable statutes of limitations. The trial court denied appellants' motion on the ground, despite different defendants and different policies, the second complaint related back to the date of filing the original complaint because the first complaint "pled within it the facts which were covered in the second complaint filed in 1986."

After the close of the presentation of evidence, respondent was allowed to amend the complaint to allege a cause of action for breach of the insurance contract against the insurance companies. Neither Parsons nor insurance company representatives testified at trial.

The jury returned a unanimous verdict in favor of respondent and against the insurance companies on the contract claim for $18,000 plus interest of

---

[1] This case was pending when the California Supreme Court announced its decision in *Moradi-Shalal* v. *Fireman's Fund Ins. Co.* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] eliminating any private right of action under Insurance Code section 790.03. Because that decision had only prospective effect, this case is governed by the decision in *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] which recognized private rights of action under Insurance Code section 790.03.

$11,795.46; compensatory damages of $82,500 on the combined bad faith claims jointly against Gorst and the insurance companies; and, punitive damages of $400,000 and $40,000 against the insurance companies and Gorst respectively. The trial court imposed a cost award of $4,660.20 but denied respondent's request for attorneys' fees.

Appellants then filed a motion for new trial and for judgment notwithstanding the verdict on the bases the statute of limitations barred the noncontractual claims; there was insufficient evidence to support an award of punitive damages; and the punitive damage award was excessive. Both motions were denied and this appeal followed.

DISCUSSION

I. *The General Verdict for Compensatory Damages Can Be Upheld Because There Is at Least One Cause of Action Which Is Free From Error and Is Supported by Substantial Evidence.*

As indicated above, the judgment for compensatory damages was entered on a general jury verdict. ■ This greatly simplifies our task on appeal because it is well established "[w]here several counts or issues are tried, a general verdict will not be disturbed by an appellate court if a single one of such counts or issues is supported by substantial evidence and is unaffected by error. . . ." (*Posz v. Burchell* (1962) 209 Cal.App.2d 324, 335-336 [25 Cal.Rptr. 896]; see also, *Louisville Title Ins. Co. v. Surety Title & Guar. Co.* (1976) 60 Cal.App.3d 781, 786 [132 Cal.Rptr. 63]; *McCloud v. Roy Riegels Chemicals* (1971) 20 Cal.App.3d 928, 935-936 [97 Cal.Rptr. 910].) "This rule requires that we assume the jury found on the cause of action which is supported by substantial evidence and is free of error." (*Khanna v. Microdata Corp.* (1985) 170 Cal.App.3d 250, 258 [215 Cal.Rptr. 860]; see also, *McCloud, supra,* 20 Cal.App.3d at p. 936.)

Thus, our review in this appeal is narrowly circumscribed: we are merely required to find one of the four noncontractual causes of action alleged by respondent is supported by substantial evidence and is unaffected by error to uphold the general verdict of compensatory damages.

We find the verdict is supported by the cause of action alleging violations of Insurance Code section 790.03, subdivision (h). Because we find the verdict may be supported on this theory, we do not address appellants' alternative arguments directed against the causes of action on the other

theories of fraud, breach of fiduciary duty or breach of the implied covenant of good faith and fair dealing.

### A. *The Trial Court Erred in Ruling the Second Complaint Related Back to the Date of Filing the Original Complaint.*

In denying appellants' motion for nonsuit based on the allegation the statute of limitations barred the noncontractual causes of action, the trial court did not reach the question of the validity or invalidity of that allegation. Instead, the court found the complaint filed October 6, 1986, related back to the original complaint filed April 4, 1984. The court stated: "It appears to me that the first complaint which was filed in 1985 pled within it the facts which were covered in the second complaint filed in 1986; that while the policy was different and while defendants were added the same general cause was at issue and therefore the second complaint related back to the first. Accordingly, the motion for non-suit will be denied."[2]

This would have been a correct ruling if appellants were brought into the action as Doe defendants under the original complaint pursuant to Code of Civil Procedure section 474.[3] However, appellants were not served with the original complaint as Doe defendants apparently because respondent could not establish appellants' identities were unknown when the original complaint was filed. Respondent was in possession of the insurance policy which identified the broker, Gorst, and the insurance companies. Payment on the tractor loss was made by check issued by Gorst. Thus, it does not appear respondent attempted to substitute appellants for Doe defendants fictionally designated in the original complaint nor does it appear under the circumstances it would have been entitled to do so. (*Nissan* v. *Barton* (1970) 4 Cal.App.3d 76, 79 [84 Cal.Rptr. 36].) Consequently, the legal effect of filing the second complaint is that October 6, 1986, is the date on which the action commenced for the newly named defendants. Thus the running of the statute of limitations for the various causes of action must be measured from that date.

---

[2] In its brief, respondent claims appellants cannot take advantage of a statute of limitations defense because the defense was defectively pled in their answer. Appellants, in turn, claim respondent waived any defect in pleading by not demurring to their answer. In our view of the case, both points were rendered moot by the court's ruling.

[3] Code of Civil Procedure section 474 provides in pertinent part: "When a plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly; . . ."

B. *Respondent's Cause of Action Accrued Upon Receipt of Appellants' April 4, 1984, Denial Letter.*

 The date on which respondent's cause of action accrued was contested in the trial court as well as on appeal. Generally an insured's cause of action against an insurer accrues upon receipt of the insurer's denial of liability to the insured. (*Neff* v. *New York Life Ins. Co.* (1947) 30 Cal.2d 165, 170 [180 P.2d 900, 171 A.L.R. 563].) Respondent argues *Neff* requires the insurer's denial to be unequivocal before the cause of action accrues. Respondent points out how appellants were unwilling to characterize the April 4, 1984, letter as a denial letter, by insisting all claims remain open pending discovery of new facts. Respondent emphasizes the conflicting positions taken in interrogatories and at trial by appellants as to whether or not the letter was or was not in fact a denial letter. As a result, respondent claims its cause of action should not be deemed to have accrued until the trial court found as a matter of law the April 4, 1984, letter constituted a denial letter for purposes of commencing the running of the various statutes of limitations.

But *Neff* itself does not require insurers to take firm, unmovable positions before a denial letter can be considered unconditional. In *Neff*, the insured's widow was not entitled to recover disability benefits under the policy because the decedent had allowed the statute of limitations to run despite possession of all facts concerning the state of his health and extent of his disability; possession of the policy defining his insurance rights; and, receipt of the insurer's letter stating an "unconditional denial of liability." (30 Cal.2d at p. 170.) That letter read in pertinent part: "It does not appear to the Company that he is wholly and permanently disabled within the meaning of the provision in the policy. It does not appear that he will be permanently, continuously and wholly prevented thereby, for life, from pursuing some gainful occupation. The Company does not feel justified, therefore, in approving the claim for disability benefits." (*Ibid.*; see also, *Frazier* v. *Metropolitan Life Ins. Co.* (1985) 169 Cal.App.3d 90 [214 Cal.Rptr. 883] [equally equivocal language].)

The letter in the present case read in pertinent part:

"The trailer, however, presents a different problem. There is no proof of theft and the particular trailer was in the possession of your employee Stevenson when it was last seen. The last known whereabouts of your employee Stevenson was when he cashed a check in Roswell, which was off of the normal route that he would have taken to New York.

"As you are aware, your policy covers the vehicles for 'Theft, Robbery and Pilferage' but excludes therefrom certain forms of theft, robbery and pilferage:

" 'This insurance does not cover

". . . . . . . . . . . . . . . . . . .

"Loss o[r] damage caused by any person or persons in the Assured's household or in the Assured's service of employment, whether the loss or damage occurs during the hours of such service or employment or not, . . .'

"In light of the above, it would appear to us that Underwriters are not responsible for the loss of the trailer in question.

"Should you have any information whatsoever, concerning the loss of your trailer which would lead us to the opinion that the trailer was not stolen by your employee Stevenson, please let us know and we shall investigate said information. . . ."

The language used in the letter at issue in this case is no more equivocal than the letter in *Neff*, the decision cited to us by respondent. Accordingly, although a trial court ruling to the contrary may likewise have been sustained on appeal, it cannot be said *as a matter of law* the April 4, 1984, letter was insufficient to be deemed a denial letter for purposes of giving rise to a cause of action. Significantly, respondent's president testified she knew from the moment she read the letter the claim would not be paid. Thus, the trial court's finding that this letter constituted a denial of liability is supported by substantial evidence and will not be disturbed on appeal.

### C. *Some of Respondent's Causes of Action Are Not Barred by the Statute of Limitations.*

The second complaint naming appellants as defendants was filed on October 6, 1986, approximately two and one-half years after respondent's cause of action accrued. It is, therefore, reasonably probable one or more of respondent's noncontractual claims was barred by the statute of limitations found in Code of Civil Procedure section 339, subdivision 1.[4] On the other hand, Code of Civil Procedure section 338, subdivision (d) provides for a three-year statute of limitations for fraud actions. The same provision would also apply to causes of action for breach of fiduciary duty based on fraud. ■ The cause of action for violation of the Insurance Code, however, appears to be the gravamen of the complaint. Consequently, we focus our attention on the latter allegation. Although not specially provided for by statute, nor previously determined by case law, we find Code of Civil

---

[4] The statute of limitations is two years for "An action upon a contract, obligation or liability not founded upon an instrument of writing . . . ." (Code Civ. Proc., § 339, subd. 1.)

Procedure, section 338, subdivision (a)'s three-year statute of limitations for "An action upon a liability created by statute" applicable for violations of Insurance Code section 790.03.[5,6]

Various cases in applying this section have defined the type of liability that is created by statute. In *Gardner* v. *Basich Bros. Construction Co.* (1955) 44 Cal.2d 191 [281 P.2d 521], the California Supreme Court stated: "A liability created by statute is one in which no element of agreement enters. It is an obligation which the law creates in the absence of an agreement." (*Id.* at p. 194.) The court held the three-year statute of limitations inapplicable because it was the parties' oral contract for lower rates rather than the statute mandating higher rates which created the liability. The substantive right of action stemmed from performance under the contract. Thus, the proper limitations period was determined by the nature of the contract of the parties—oral or written.

In *Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706 [152 Cal.Rptr. 65], the court held the three-year statute of limitations of Code of Civil Procedure 338, subdivision (a) applicable to causes of action for deprivations of civil rights under the federal statute. (42 U.S.C. § 1983.) There the court explained: " 'This section applies only where the liability is embodied in a statutory provision *and* was of a type which did not exist at common law.' " (88 Cal.App.3d at p. 717, italics in original.)

In *Copitas* v. *Retail Clerks Intern. Ass'n.* (9th Cir. 1980) 618 F.2d 1370, the federal court in a suit brought under the federal labor laws found the three-year period appropriate because the union's statutory duty of fair representation was a duty that "exists independently of a union's constitution or bylaws." (*Id.* at p. 1373.) The court recognized a claim, properly characterized as statutory, creates rights and obligations different from any existing at common law, yet can be analogous to certain state law torts. (*Ibid.*)

Other federal courts describe a liability created by statute as a liability which would not exist but for the statute. (*Fidelity & Deposit Co.* v. *Lindholm* (9th Cir. 1933) 66 F.2d 56, 58; *Travelers Express Co.* v. *Cory* (9th Cir. 1981) 664 F.2d 763, 766.)

The parties have not cited this court to any case in which the period of limitations was determined for actions under section 790.03 similar to the

---

[5] A three-year statute of limitations applies to:
"(a) An action upon a liability created by statute, other than a penalty or forfeiture.
" . . . . . . . . . . . . . . . . . .
"(d) An action for relief on the ground of fraud or mistake . . . ." (Code Civ. Proc., § 338, subds. (a) & (d).)
[6] All further statutory references are to the Insurance Code unless otherwise indicated.

case at bar. Nor have we discovered any. The two cases cited by both parties that discuss section 790.03 shed no light on this question. (*Richardson* v. *GAB Business Services, Inc.* (1984) 161 Cal.App.3d 519 [207 Cal.Rptr. 519]; *Richardson* v. *Allstate Ins. Co.* (1981) 117 Cal.App.3d 8 [172 Cal.Rptr. 423].) Neither decision required a determination of the proper period of limitations for actions under section 790.03 and neither decision purported to do so. Consequently, we must determine the proper limitations period from the general principles defining a "liability created by statute."

The Unfair Trade Practices Act (§ 790 et seq.) defines unfair and deceptive practices and unfair methods of competition and prohibits such acts in the business of insurance. ■ Because insurance companies are exempt from the general antitrust prohibitions of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.), only section 790.03 prohibits anticompetitive activity by an insurer. In *Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994 [110 Cal.Rptr. 470], the plaintiff brought a class action alleging the defendant insurer had illegally compelled borrowers to purchase policies of life insurance as a condition of obtaining home loans. The court held the allegations constituted a cause of action based upon subdivision (c) of section 790.03, which prohibits coercion by an insurer resulting in unreasonable restraint of the business of insurance. (See also, *Shernoff* v. *Superior Court* (1975) 44 Cal.App.3d 406 [118 Cal.Rptr. 680] [class action allowed under this section for damages against title insurers for alleged conspiracy to fix title insurance rates].) These cases expressly recognized only the act prohibits anticompetitive behavior by an insurer. ■ In other words, this section imposes a statutory duty on insurers to refrain from anticompetitive acts or coercion which would not exist but for the statute. As such, this duty is a "liability created by statute" within the meaning of Code of Civil Procedure section 338, subdivision (a).

Later, the California Supreme Court extended the principle by holding private litigants may rely on the proscriptions set forth in the act as a basis for imposition of civil liability upon an insurer in *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880. In that decision, the court held section 790.03 created a private right of action not only for insureds against insurers, but also for third party claimants under subdivision (h). The court noted: "an examination of the language of subdivision (h) demonstrates that it was intended to prohibit unfair settlement practices by insurers directed against both claimants and insureds. For example, the subdivision prohibits misrepresenting the facts regarding policy coverage to claimants (subd. (h)(1)), misleading a claimant as to the applicable statute of limitations (subd. (h)(15)), and advising a claimant not to obtain the services of an attorney (subd. (h)(14)). Some of the subdivisions refer to claimants and insureds separately (subd. (h)(10), (11)), and others only to insureds (subd.

(h)(6), (7)). Thus, the subdivision by its own terms extends certain of its protections to claimants, some to insureds, and others to both claimants and insureds.

" . . . . . . . . . . . . . . . . . .

"In the present case, plaintiff does not seek to rely upon the violation of the insurer's duty to its insured to settle plaintiff's claim. Rather, she relies upon the insurer's duty owed to her as a claimant under subdivision (h)(5) and (h)(14) of section 790.03, *a duty created by those statutory provisions and owed directly to plaintiff as a claimant.*" (23 Cal.3d at pp. 888-890, italics added.) The court concluded plaintiff was entitled to pursue her statutory cause of action against the insurer, but that the third party suit may not be brought until the action between the injured party and the insured is concluded.

This decision recognized an insurer's duty to a third party claimant is a liability created by statute and would not exist in the absence of the statute. Specifically, it is a duty that exists independent of a contract. Indeed, it is an obligation the statute created despite the lack of an agreement between the claimant and the insurer. ■ The proper characterization of an insurer's obligation to a third party claimant under section 790.03 must be considered a statutory one for purposes of determining the appropriate statute of limitations.

■ Appellants argue the specific provisions of section 790.03 relied on by respondent are so closely akin to a cause of action for breach of the implied covenant of good faith and fair dealing that the two-year period of limitations applicable to that cause of action when tort damages are sought ought to apply as well. In support of their argument, appellants rely on dicta in *Richardson* v. *GAB Business Services, Inc., supra,* 161 Cal.App.3d at page 524, in which section 790.03 is characterized as a "codification of the earlier tort of bad faith, which historically is a breach of the duty of good faith and fair dealing which is implied in every contract." The court, however, did not discuss the period of limitations applicable to a cause of action under section 790.03 because it held that section inapplicable to a self-insured corporation not in the business of insurance.

We admit appellants' argument has a certain surface appeal. However, we also note it ignores the overall purpose and function of the statute.

■ The breach of the implied covenant of good faith and fair dealing is not coterminous with violations of the statute's antitrust, anticompetitive provisions. Nor would a third party claimant be able to assert a cause of

action for alleged breach of that implied covenant in the absence of any contractual relationship with the insurer. We also note, in order to assert a cause of action for violations of section 790.03, a plaintiff must assert specific factual allegations corresponding to the practices which are actionable under that section. On the other hand, to assert a cause of action for breach of the implied covenant of good faith and fair dealing, the allegations and proof can be more generalized without any requirement of specific acts or practices demonstrating bad faith.

While there may be some overlapping of elements of proof of the two causes of action, they are not identical. As recognized in the context of an action for deprivation of civil rights, the duty created by the Civil Rights Act of 1964 (42 U.S.C. § 1983) was still properly characterized as a statutory duty although closely analogous to state common law torts. (See e.g., *Copitas* v. *Retail Clerks Intern. Assn., supra*, 618 F.2d 1370.) And although some of the same substantive rights might be infringed by a breach of the implied covenant and by violations of section 790.03, the two causes of action are distinct and should be treated as such. (See e.g., *Williams* v. *Transport Indemnity Co.* (1984) 157 Cal.App.3d 953, 963 [203 Cal.Rptr. 868] ["The duties owed an insured may flow *either* from the insurance contract itself *or from statutes* imposing such duties. . . . [A]ny duty to effectuate the good faith settlement of a claim owed to a noninsured, *must* be statutorily imposed." Italics added.].) Thus, the duty owed an insured under section 790.03 is distinct and can exist independent of the insurance policy.

We conclude, a cause of action under section 790.03 is a liability created by statute and is thus governed by the three-year period of limitations found in Code of Civil Procedure section 338, subdivision (a). Because we find the three-year period applicable, it follows respondent's cause of action for violations of section 790.03 was not time barred.

D. *There Is Substantial Evidence to Support the General Verdict Awarding Compensatory Damages for Violations of Section 790.03.*

The court in *Royal Globe, supra*, 23 Cal.3d at pages 890-891 held a single violation knowingly committed under section 790.03, subdivision (h) is a sufficient basis for an action against an insurer by a private party. In the present case, the court instructed the jury on four specific violations of section 790.03, subdivision (h): knowingly misrepresenting to claimants pertinent facts or insurance policy provisions relating to coverage (subd. (h)(1)), failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies (subd. (h)(2)), failing to affirm or deny coverage within a reasonable time after

proof of loss requirements have been completed and submitted by the insured (subd. (h)(4)), and failing to promptly provide a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim (subd. (h)(13)).

■ There was evidence of each of these violations and especially of subdivision (h)(2) of section 790.03, failure to act promptly upon communications concerning claims. Seven months elapsed before respondent received payment on the tractor loss. Respondent received no communication concerning the trailer loss for 15 months despite phone calls and a letter to the insurer's representative demanding payment. All witnesses agreed 15 months was an unreasonable delay. Indeed, Mr. Lemon of Gorst testified it was the longest delay he had seen in over 34 years in the insurance business. In closing argument, counsel for appellants conceded the evidence was "absolutely uncontradicted" there had been a failure because the denial letter did not go out in time. Most importantly, counsel told the jury he agreed the delay "violated Insurance Code provisions."

We agree with counsel, there was substantial evidence appellants unreasonably and unjustifiably delayed in communicating their denial of liability to respondent and that this delay constituted a violation of section 790.03.

In sum, because we find at least one cause of action properly instructed upon, supported by substantial evidence, and free from error, we affirm the jury's general verdict for compensatory damages. (See discussion and authority at p. 427, *ante*.)

II. *The Award of Punitive Damages Was Not Improper.*

Appellants challenge the award of punitive damages, alleging there is insufficient evidence to support the award, the award cannot stand in the absence of evidence of appellants' wealth, the several instructional errors regarding punitive damages were prejudicial, and punitive damages violate the federal Constitution. We shall address each of these concerns.

A. *There Is Substantial Evidence to Support the Award of Punitive Damages.*

■ In assessing whether sufficient evidence was presented at trial to support an award of punitive damages, reasonable presumptions generally favor the correctness of the verdict and judgment. Thus, great weight is accorded the actions of the jury and the trial court. (*Devlin* v. *Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 388 [202 Cal.Rptr. 204].) Nonetheless, the appellate court must ascertain whether the record

indicates there is substantial evidence to support a punitive damage award. (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 821 [169 Cal.Rptr. 691, 620 P.2d 141].) The factors to be considered in assessing a punitive damage award are the nature of the defendant's acts, the amount of compensatory damages awarded and the wealth of the defendant. (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910 [148 Cal.Rptr. 389, 582 P.2d 980].)

The trial court instructed the jury it could award punitive damages against appellants if they determined there was clear and convincing evidence the appellants acted with fraud, oppression or malice and the appellants acted with willful or conscious disregard of respondent's rights. ▆ Appellants, in an attempt to re-argue the evidence introduced at trial, point out conflicting evidence concerning appellants' lack of willfulness. However, an independent review of the record, in the light most favorable to respondent, discloses ample evidence to support the jury's verdict.

A review of the record reveals appellants failed to affirm or deny coverage for at least 15 months. This was the longest delay ever seen by appellant Gorst or respondent's expert and was admitted to be unreasonable by appellants. Appellants regularly contradicted themselves as to whether the April 4, 1984, letter was or was not a denial of liability. Appellants refused to confirm denial of liability was based on the employee theft provision and occasionally referred to a nonexistent mysterious disappearance defense.

According to Mr. Lemon of Gorst, the London based insurance companies have a policy of never communicating directly with their insureds. Gorst never alerted respondent of the decision to deny the trailer loss by including with payment of the tractor loss a reservation of rights or other communication. For months the insurance companies knew Parsons had still not denied respondent's claim yet did nothing to correct the error. Neither Gorst nor the insurance companies responded to respondent's letter in October 1983 demanding payment for the trailer loss. Nor did Parsons or the insurance companies respond to two letters from respondent's attorneys requesting clarification of the denial letter and payment of the trailer loss.

Gorst failed to properly investigate the whereabouts of the employee Stevenson and failed to supervise the agency hired to perform the skip trace investigation. Mr. Lemon of Gorst admitted at trial he failed to monitor Parsons's activities and admitted the next time he would handle the matter differently. In sum, there is substantial evidence of callous indifference sufficient to justify the unanimous jury verdict for punitive damages.

Finally we note, the trial court independently reviewed the evidence upon the new trial motion and motion for judgment notwithstanding the verdict, including the amount of damages, and concluded the verdict was supported by the evidence. We adhere to the principle the trial court's determination is entitled to great weight on appeal. (*Continental Dairy Equip. Co.* v. *Lawrence* (1971) 17 Cal.App.3d 378 [94 Cal.Rptr. 887].)

B. *The Punitive Damages Award May Stand Despite Lack of Evidence of Appellants' Wealth.*

 Appellants next argue the award of punitive damages cannot stand because respondent failed to introduce evidence of appellants' wealth at trial. In support of their argument appellants cite *Dumas* v. *Stocker* (1989) 213 Cal.App.3d 1262 [262 Cal.Rptr. 311], which reversed an award of punitive damages against a landlord on the basis the award was not supported by substantial evidence. In *Dumas*, the appellant challenged the award as excessive. The court found the absence of any evidence of Stocker's net worth was exacerbated by Dumas's counsel whose closing argument was "laced with strident appeals to the passion and prejudice of the jury and references to 'facts' [of Stocker's wealth] unsupported by any evidence." (*Id.* at p. 1270.) These improper arguments, coupled with attacks on Stocker's character as a greedy slumlord, and an appeal to patriotic fervor by a lengthy reference to Dumas's military record, apparently convinced the jury to award punitive damages based primarily on sympathy, speculation, passion and prejudice. The court reversed and remanded the punitive damages award for an evidentiary hearing on Stocker's net worth, unable to determine from the record whether the award was excessive.

Appellants on appeal do not claim the amount of punitive damages is excessive nor do they claim the award is based on passion and prejudice of the jury inflamed by improper arguments of counsel.[7] Appellants argue because the London based insurance companies were referred to as "London insurers" this created an improper inference appellants were associated with Lloyds of London and were therefore vastly more wealthy than respondent. Therefore, appellants argue, with the absence of evidence in the record of appellants' wealth, there is no way for an appellate court to give a meaningful review of the damage award and the award must be reversed.

This argument might have merit if we were asked to review the amount of the award. However, as previously noted, appellants do not attack the

---

[7] Although raised in their motions for new trial and judgment notwithstanding the verdict, appellants do not raise the issue of the excessiveness of the punitive damage award on appeal. We may then treat the issue as abandoned. (*Rossiter* v. *Benoit, supra*, 88 Cal.App.3d at p. 711.)

amount of the award as excessive. Evidence of appellants' net worth thus is irrelevant to this appeal.

Even if the award was challenged as excessive, *Dumas* is in the minority in suggesting evidence of a defendant's net worth is a prerequisite to a finding a punitive damages award is appropriate. The overwhelming majority of California courts have ruled to the contrary. (See e.g., *Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d 910 [defendant's wealth a factor to consider in awarding punitive damages]; *Fenlon* v. *Brock* (1989) 216 Cal.App.3d 1174 [265 Cal.Rptr. 324] [punitive damages award may stand despite absence of evidence of defendant's wealth]; see also, *Hanley* v. *Lund* (1963) 218 Cal.App.2d 633 [32 Cal.Rptr. 733]; *Vossler* v. *Richards Manufacturing Co.* (1983) 143 Cal.App.3d 952 [192 Cal.Rptr. 219]; contra, *People* ex rel *Dept. of Transportation* v. *Grocer's Wholesale Co.* (1989) 214 Cal.App.3d 498 [262 Cal.Rptr. 689].)

Instead, the rule appears to be, plaintiff may, but is not required to, introduce evidence of the defendant's financial condition when seeking punitive damages and the defendant may present evidence of an inability to pay. (*Fenlon* v. *Brock, supra,* 216 Cal.App.3d 1174; *Greenfield* v. *Spectrum Investment Corp.* (1985) 174 Cal.App.3d 111 [219 Cal.Rptr. 805]; *Vossler* v. *Richards Manufacturing Co., supra,* 143 Cal.App.3d 952; *Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623 [178 Cal.Rptr 167]; *Zimmer* v. *Dykstra* (1974) 39 Cal.App.3d 422 [114 Cal.Rptr. 380]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

Indeed, in *Dumas,* relied upon by appellants, the court distinguished the situation in which the defendant never challenges the award as excessive. By doing so, the defendant inferentially stipulates away the issue of net worth and renders evidence by the plaintiff unnecessary. (*Dumas* v. *Stocker, supra,* 213 Cal.App.3d at p. 1268.)

For these reasons, we conclude the jury verdict awarding punitive damages may stand despite the absence of evidence of appellants' net worth.[8]

C. *Any Alleged Instructional Errors Regarding Punitive Damages Were Either Waived or Were Not Prejudicial.*

Appellants next assert the court erred in instructing a corporation could be liable in punitive damages for the acts of a mere agent, without

---

[8] We note the California Supreme Court recently granted review in *Adams* v. *Murakami* (Cal.App) review granted June 27, 1990 (S003530) limited to the issue of "whether a plaintiff or defendant must prove a defendant's net worth to recover punitive damages." (*Adams* v. *Murakami,* S003530.)

more, and by instructing Gorst was a managing agent as a matter of law. We note no objection was made to these instructions below and may be deemed waived on appeal. ■ In any event, instructional error requires reversal only when the reviewing court concludes the error has resulted in a miscarriage of justice. A miscarriage of justice occurs only when it is reasonably probable a result more favorable to the appealing party would have been reached absent the error. In reviewing the instructions we adhere to the principle, "A reviewing court must adopt the construction of jury instructions which will support rather than defeat the judgment if they are reasonably susceptible to such interpretation." (*Little* v. *Stuyvesant Life Ins. Co.* (1977) 67 Cal.App.3d 451, 465 [136 Cal.Rptr. 653].)

■ Appellants correctly point out a principal may be held liable for punitive damages based upon the conduct of an agent only if: 1) the principal had advance knowledge of the unfitness of the agent and employed that person with a conscious disregard of the rights and safety of others; 2) the principal authorized or ratified the conduct which is found to be oppressive, fraudulent or malicious; or, 3) the agent is a "managerial agent." (*Egan* v. *Mutual of Omaha Ins. Co., supra*, 24 Cal.3d 809, 822.)

The court instructed the jury as follows, inadvertently inserting the word "agent" as well: "Punitive damages may be awarded against a principal; that is, the insurers in London, for the acts of the agent Gorst in Los Angeles, but only if you by clear and convincing evidence determine that the principal; that is, the London insurers, authorized or ratified the conduct which is found to be the basis for punitive or exemplary damages.

"If the principal is a corporation the advance knowledge and conscious disregard or act of oppression, fraud or malice must be on the part of a director, manager, *agent* or managing agent." (Italics added.)

In an earlier instruction on principal/agent liability the court instructed: "One is the agent of another person, called a principal, if he is authorized to act for or in place of such person. An agent acts in a managerial capacity where the degree of discretion permitted the agent in making decisions is such that the agent will ultimately determine the business policy of the principal. The evidence here clearly establishes as a matter of law that Gorst is such an agent."

■ When the instructions are viewed as a whole, it appears the court instructed the jury Gorst was a managing general agent and instructed on the general principle acts of the agent, to be binding on the corporation, must be authorized or ratified by the corporation. Thus, when taken as a whole, the jury was properly instructed.

Appellants assert the instructions were prejudicial, but fail to point out how the result might have been different. Contrary to appellants' assertions, the jury did not need to rely on evidence of Parsons's or Frontier's failures to award punitive damages against Gorst or the insurance companies.

Mr. Lemon, as a vice-president of Gorst for over eight years, is clearly a managing agent of that company. Gorst may be liable in punitive damages for Lemon's failure to notify respondent of the insurer's intended denial of the claim and his active concealment of that information from respondent. The fact Gorst, through Lemon, failed to sufficiently investigate the claim and failed to properly supervise the Frontier Agency hired to conduct the skip trace investigation of the respondent's employee, is just one additional factor the jury could have considered in awarding punitive damages against Gorst.

The award against the insurance companies is also not directly dependent upon Gorst in fact being their managing agent. While it is true Gorst has limited authority to settle claims and no authority to deny claims, Gorst has total discretionary authority as to which companies or entities to accept as insureds and as to the amount of coverage as well as the rate for the policy. It is hard to conceive of decisions less likely to ultimately determine the business policy of the insurance companies. Indeed, at trial, Mr. Lemon of Gorst admitted being a "managing general agent" for the insurance companies and their exclusive broker in California. A rational jury could determine Gorst was a managing agent not only of Gorst but of the insurance companies as well and impute Gorst's acts of concealment and neglect to them.

Additionally, the jury could have found the insurance companies ratified Parsons's inaction and failure to communicate their denial of the claim in a timely fashion. There was evidence of telexes and letters between them indicating Parsons had failed, and continued to fail, to follow their order to send the denial letter. At no time did the insurance companies repudiate Parsons's acts. Rather, they chose to allow Parsons to represent them, through and including representing them at trial.

Alternatively, the jury could have found the instructions on agency unnecessary and chose to instead award punitive damages against the insurance companies directly for their alleged policy of never communicating directly with insureds for any reason, even, obviously, when the denial of a claim has already been unreasonably delayed.

In sum, appellants have failed to demonstrate prejudice or that the result would have been any different in the absence of instructional error.

## D. *Punitive Damages Do Not Violate the Federal Constitution as a Matter of Law.*

Finally, appellants assert for the first time on appeal punitive damages violate the federal Constitution. They allege the vague and arbitrary standards for imposition of punitive damages affords a jury unbridled discretion which is fundamentally unfair and a violation of the due process clause of the United States Constitution.

During the pendency of this appeal the U.S. Supreme Court rendered its decision in *Pacific Mutual Life Ins. Co.* v. *Haslip* (1991) 499 U.S. __ [113 L.Ed.2d 1, 111 S.Ct. 1032] expressly holding an award of punitive damages several times the amount of compensatory damages did not violate the due process clause of the Fourteenth Amendment because the award was based on objective criteria and subject to procedural safeguards. This was so despite the lack of any evidence at trial of the defendant's wealth. (See II C, *ante*.)

In that decision the court rejected the suggestion the standard of proof ought to be by "clear and convincing" evidence, satisfied the prevailing standard in Alabama, "reasonably satisfied from the evidence," was constitutionally sufficient. (499 U.S. at p. __, fn. 11 [113 L.Ed.2d at p. 23].)

 Thus, bound as we are by precedent and the doctrine of stare decisis, we are compelled to find punitive damages do not violate the federal constitution as a matter of law. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

Moreover, because of California's higher standard of proof by "clear and convincing evidence" and objective criteria for determining the propriety and amount of an award, awards of punitive damages in this state have sufficient procedural safeguards to satisfy due process. (See e.g., *Neal* v. *Farmers Ins. Exchange, supra*, 21 Cal.3d 910; BAJI No. 14.71; *Downey Savings & Loan Assn.* v. *Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072 [234 Cal.Rptr. 835].)

## III. *Appellants Have Failed to Demonstrate Prejudice From the Court's Erroneous Instruction on Evidence Code Section 667.*

By the time this case came to trial, respondent's employee had been missing for more than six and a half years. However, the employee had been missing for 15 months at the time respondent's claim for the trailer loss was denied. As a consequence, appellants claim it was prejudicial error for the trial court to instruct the jury a person missing for more than five

years is presumed dead. Appellants claim this instruction was prejudicial because it essentially told the jury to find the employee was murdered and the trailer stolen thereby validating respondent's claim under the policy of theft of the trailer by a nonemployee. Appellants further claim this instruction was erroneous because the employee had not been missing for five years at the crucial point in question—on the date the claim was denied by the insurance companies based on possible employee theft.

We have to agree with appellant this instruction was not relevant to the case on the date the cause of action accrued. However, we do not find this error sufficiently prejudicial to warrant reversal. Absent this instruction, it is unlikely the result would have been any different. There was evidence of considerable, yet unsuccessful, efforts to locate the employee before the trial. Respondent's president testified she filed a missing person's report, she contacted the FBI as well as the El Monte Police station. After finding the tractor on fire, the police in Texas went to the employee's home in Amarillo and found the residence deserted. The Frontier Agency also investigated the fire in Texas and contacted several people and businesses in an attempt to locate the employee. Both respondent's and appellants' experts testified "foul play" was a plausible explanation for the employee's disappearance. Thus the jury could have determined the employee was most likely dead even before they were instructed on the evidentiary presumption (Evid. Code, § 667).

More importantly, the jury only needed to find it was more likely than not the trailer was stolen by someone other than the employee in order to find for respondent on the contract cause of action. It was not necessary for this purpose to also find the employee was dead. Hence, it cannot be said the jury would have found for the insurers on the contract action in the absence of this instruction.

Nor does this error have any effect on the award of compensatory or punitive damages. ▮▮▮▮ ▮▮ An insurer has an obligation to act reasonably promptly in the processing of claims regardless if the insured's claim is ultimately deemed to be invalid. (*Bodenhamer* v. *Superior Court* (1987) 192 Cal.App.3d 1472 [238 Cal.Rptr. 177] [insurer's duty to comply with section 790.03 prohibiting insurers from engaging in unfair claims settlement practices can arise prior to and independent of final determination of insured's liability to third parties]; *Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 190 [231 Cal.Rptr. 791] ["Logic compels the conclusion that under section 790.03, the insurer must process

all claims submitted to it promptly and competently, even in those instances where no coverage will ultimately be provided."].)[9]

In conclusion, we find it unlikely the outcome of the case would have been any different in the absence of this erroneous instruction.

## DISPOSITION

The judgment is affirmed. Respondent to recover its costs of this appeal.

Lillie, P. J., concurred. Woods (Fred), J., concurred in the judgment.

Appellants' petition for review by the Supreme Court was denied July 10, 1991.

---

[9] This situation is to be distinguished from a third party action against an insurer under section 790.03 in which liability to the third party by the insurer is predicated upon liability of the insured and coverage of the insured. "The law is firmly settled that in order to bring a section 790.03 action against the insurer, the third party claimant must demonstrate that the underlying suit against the insured has been concluded by either final judgment or settlement which determines the liability of the insured." (*Green* v. *Travelers Indemnity Co.* (1986) 185 Cal.App.3d 544, 553 [230 Cal.Rptr. 13]; see also, *Royal Globe* v. *Superior Court, supra*, 23 Cal.3d 880.)