REPUBLIC WESTERN INSURANCE COMPANY, Plaintiff–Appellant,

v.

SPIERER, WOODWARD, WILLENS, DENIS AND FURSTMAN, a California Professional Corporation; Steven F. Spierer, Defendants–Appellees,

SPIERER, WOODWARD, WILLENS, DENIS AND FURSTMAN, a California Professional Corporation; and Steven F. Spierer, an Individual, Counter–Claimants,

v.

REPUBLIC WESTERN INSURANCE CO., dba Oxford Property and Casualty Insurance Company, an Arizona Corporation, Counter–Defendant.

No. 93–56314.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1995.

Decided Oct. 17, 1995.

James A. Murphy, Murphy, Pearson, Bradley & Feeney, San Francisco, California, for plaintiff-appellant.

Robert D. Walker, Law Offices of Robert D. Walker, Los Angeles, California, for defendants-appellees.

Before SCHROEDER and KLEINFELD, Circuit Judges, and KING, District Judge.*

KLEINFELD, Circuit Judge.

Spierer was paid an attorney's fee in advance of the work to be done, and disgorged it when a conflict of interest prevented him from doing the work. His counterclaim was an attempt to have his malpractice insurer pay him the attorney's fee for the work he did not do, with interest. He lacked entitlement to the money. Also, his claim was barred by the statute of limitations, because he did not sue the insurance company until more than four years after his cause of action, if he had one, had accrued.

**Facts.**

First Energy Leasing Corporation ("FELC") sold leases of an energy conservation device as tax shelters. It retained Spierer and his law firm (collectively "Spierer") to render a tax opinion on the availability of federal income tax credits to potential lessees of the system. FELC paid Spierer $200,000 in exchange for Spierer's promise to provide a legal defense of the tax opinion and to litigate a single "test case" if necessary. Spierer paid $35,000 of that amount to another lawyer specializing in tax matters. That left $165,000, the amount at issue in this appeal.

In the promotional materials sent by FELC to potential lessees, FELC represented that Spierer would provide legal assistance to all lessees, not just to one lessee in a "test case." Spierer brought the misrepresentation to FELC's attention, but FELC did not correct the materials.

The tax shelter went bad. The New York Attorney General deemed the leases investment contracts, subject to securities regulation. The Internal Revenue Service ordered audits of the returns of all lessees, and challenged the lessees' claimed tax deductions.

The investors sued FELC and Spierer in multiple class actions, which were consolidated in the Eastern District of New York. Spierer had a malpractice insurance policy with Republic Western Insurance Company, doing business as Oxford Property and Casualty Insurance Company, but his policy limit was only $5 million. His potential liability to the investors appeared to be between $162 million and $1 billion.

Oxford retained as coverage counsel Ronald Mallen of the law firm Long & Levitt. Oxford offered to pay for independent counsel, because the excess of the claim over the policy limit gave rise to a potential conflict of interests between insured and insurer. Spierer selected the Illinois firm of Hinshaw & Culbertson ("Hinshaw") as his independent counsel.

Spierer, through Hinshaw, moved for a declaration of his duties regarding the unearned $165,000 of his retainer, in an attempt to mitigate Spierer's liability to the investors. The motion took the position that because they were suing him, he would have a conflict of interests representing the investors against the IRS. He proposed to disgorge the unearned legal fee so that another lawyer could perform the service. As Spierer described the subject matter of the motion, he sought "a declaration of the appropriate disposition of the remaining defense fees advanced by FELC to Spierer, the amount of $165,000...."

On October 4, 1985, the court granted Spierer's motion. The court relieved Spierer from representing any of the investors. The court order, in accord with Spierer's request, described the $165,000 as the unearned portion of the fee Spierer had collected:

> [e]ach interested party shall submit to the Court by October 18, 1985 a proposal for

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

the disposition of fees collected by the Spierer ... firm and recommendations concerning the providing of legal services set forth in the retainer agreement...., and it is further

ORDERED that the sum of $165,000 be deposited in the Registry of this Court by Spierer ... by October 18, 1985....

Spierer claimed, in a June 13, 1985 letter to Oxford, that the $165,000 should be treated as covered by his malpractice policy, so Oxford should pay the money into the registry of the court. On September 9, 1985, Oxford, through Mallen, disclaimed coverage, arguing that the "return of fees by way of restitution does not constitute coverage." Thus, as of September 9, 1985, Spierer was advised that Oxford rejected his claim for the money under its policy. Spierer then used his own money to make the deposit. He did not sue Oxford, allegedly because Hinshaw advised that suing Oxford at that time would damage Spierer's position in the class action. Oxford settled the class action for $4.9 million, within policy limits.

Spierer continued to maintain that Oxford owed him reimbursement of the $165,000. On June 7, 1990, Oxford filed a complaint for declaratory judgment in the United States District Court for the Central District of California. It sought a declaration that it was not required to indemnify Spierer for the $165,000 payment because the payment was not covered by the terms of the insurance policy, and Spierer was barred by the statute of limitations from bringing any action against Oxford with regard to Oxford's denial of coverage. Spierer counterclaimed for the $165,000 plus interest.

By stipulation by the parties and order of the district court, the case was tried in front of a Special Master.[1] The Special Master conducted a bench trial, and found in favor of Spierer for $165,000 with interest from October 18, 1985 as well as attorneys' fees. The district court adopted the Special Master's findings and conclusions and entered judgment.

### Analysis.

#### A. Standard of Review.

■ The parties agree that California law governs. We review interpretations of state law *de novo*. *Gayle Mfg. Co. v. Federal Sav. & Loan Ins. Corp.*, 910 F.2d 574, 578 (9th Cir.1990).

■ We review decisions to grant or deny a declaratory judgment *de novo*. *Tashima v. Administrative Office*, 967 F.2d 1264, 1273 (9th Cir.1992).

Findings of fact may not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a). Our standard is "a definite and firm conviction that a mistake has been committed." *United States v. Ramos*, 923 F.2d 1346, 1356 (9th Cir.1991).

#### B. Limitations.

■ Spierer's counterclaim is barred by California's four-year statute of limitations. Cal.Code Civ.Proc. § 337. His cause of action accrued upon receipt of Oxford's denial of liability for the $165,000, in 1985. *Liberty Transport, Inc. v. Harry W. Gorst Co., Inc.*, 229 Cal.App.3d 417, 280 Cal.Rptr. 159, 165 (1991). He did not file his counterclaim for the money until his answer to Oxford's 1990 suit for declaratory judgment.

■ The Special Master accepted Spierer's argument that the statute of limitations was tolled, or did not accrue until the class action was over, because Hinshaw advised Spierer that suing Oxford before the class action had terminated could be detrimental. Spierer, however, has cited no authority for the proposition that Oxford should be estopped by the advice of independent counsel. Oxford was not responsible for Hinshaw's advice to Spierer, even if it was wrong (and there is no reason to think it was):

---

1. Fed.R.Civ.P. 53 states that a "reference to a master shall be the exception and not the rule.... [I]n actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it." We do not intimate approval of the reference to a master in this case. The propriety of the reference has not been raised as a point on appeal, so we do not decide whether reference was appropriate.

[I]ndependent counsel retained to conduct litigation in the courts act in the capacity of independent contractors, responsible for the results of their conduct and not subject to the control and direction of their employer over the details and manner of their performance.... Absent compelling reasons of public policy [citations omitted] an employer is not liable for the negligence of an independent contractor.

*Merritt v. Reserve Ins. Co.*, 34 Cal.App.3d 858, 110 Cal.Rptr. 511, 526 (1973).

■ Spierer cites no authority in support of his argument that the statute would not begin to run until after the class actions were all settled. We see no justification for adopting the position. If Oxford owed him the $165,000, he could sue for it then. That means his cause of action had then accrued. If he decided not to sue at that time, because his larger financial interests were better served by silence, then he is responsible for the delay. Spierer, in 1985, faced a much bigger potential problem than $165,000, and might wisely forego his immediate attempt to obtain reimbursement to reduce the risk that he would be left holding the bag for the investors' claims.

## C. Coverage.

Oxford is entitled to the declaratory judgment it sought, because its policy did not afford coverage to Spierer for restitution of an unearned legal fee. The policy provides that Oxford "agrees to pay ... all sums ... which [Spierer] shall become legally obligated to pay as Damages as a result of Claims first made and reported in writing to the company during the policy period."

■ The $165,000 was not "Damages." That term is defined as "a monetary judgment, award or settlement.... Any judgment must be the result of an actual contested trial on the merits." Spierer's obligation came about because his conflict of interests disabled him from earning his retainer, so on his own initiative, he deposited the money into court. He claims that he had earned the money when he received it, because FELC had at that time achieved its objective of limiting its potential expenditure. We cannot accept that argument. The retainer

agreement might have been worth $200,000 to FELC on that basis, but what Spierer promised in exchange for the $200,000 was work, which he became unable to do. The Special Master characterizes the $165,000 as a means by which Spierer bought a release of liability from the investors:

[t]he $165,000 was the sum that [Spierer] had to pay to buy their peace with the class actions plaintiffs in order to avoid the massive defense liability to which [Spierer was] otherwise exposed. While this fact might not have been entirely clear to those with whom [Spierer was] negotiating, it was clear to Oxford. Oxford knew that classifying the $165,000 as the equivalent of "fees" did not make it a return of fees....

This finding is clearly erroneous. It has the effect of requiring Oxford to pay Spierer a legal fee which he did not earn, plus interest from the time he acknowledged that a conflict of interests prevented him from earning it.

The class action order relieved Spierer from providing further legal services to the investors, but did not release him from liability. Spierer's application for the order called the $165,000 "remaining defense fees," which in context meant the money Spierer had been paid but had not earned. He did not characterize the money as damages, or as payment for a release. The court order requested a "proposal for the disposition of fees collected by Spierer ... and recommendations concerning the providing of legal services in the [FELC] retainer agreement...."

■ The $165,000 became, as Mr. Mallen's 1985 letter correctly said, "return of fees by way of restitution." Restitution was due, once Spierer, having received the money in advance of performing the promised legal services, became unable to earn it. Restatement of Restitution §§ 108, 160, and Comment d; I George E. Palmer, *The Law of Restitution* § 4.24 (1978) ("in personal services contracts restitution also is an appropriate remedy when a payment has been made for services which the other party fails to perform. The problem has arisen in con-

nection with the services of lawyers....").
Restitution is not limited to money wrongfully acquired, as Spierer argues. *Jaffe v. Cranford Ins. Co.*, 168 Cal.App.3d 930, 214 Cal.Rptr. 567, 571 (1985). Money can be lawfully acquired yet restitution can be owed, because of unjust enrichment and unjust impoverishment. Whenever someone accidentally pays a $100 creditor $1,000 by mistake, the $900 is owed under restitution theory, although the creditor did nothing wrong to obtain it. Restitutionary payments such as Spierer's are not "damages." *Id. See also Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 547, 833 P.2d 545, 554 (1992) ("The rule [is] that insurable damages do not include costs incurred in disgorging money that has been wrongfully acquired").

### Conclusion.

Spierer's claim for the $165,000 was barred by limitations. The payment at issue in this case was not covered under the clear language of Oxford's insurance policy. Oxford is entitled to a declaratory judgment which says so.

The judgment is VACATED, the decision of the district court is REVERSED, and the case is REMANDED for entry of a declaratory judgment in Oxford's favor.