[No. S031022. June 1, 1995.]

MANUFACTURERS LIFE INSURANCE COMPANY et al., Petitioners,
v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
WEIL INSURANCE AGENCY, INC., Real Party in Interest.

WEIL INSURANCE AGENCY, INC., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
MANUFACTURERS LIFE INSURANCE COMPANY et al., Real Parties
in Interest.

## COUNSEL

Khourie, Crew & Jaeger, Townsend and Townsend Khourie and Crew, Eugene C. Crew, Daniel J. Furniss, Louise E. Ma, Timothy F. Perry, Amy Slater, Thoedore T. Herhold and Paul F. Kirsch for Petitioner and Real Party in Interest Weil Insurance Agency, Inc.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Sanford Gruskin and Thomas Greene, Assistant Attorneys General, Thomas P. Dove, Jesse W. Markham, Jr., Dave Stirling, Richard N. Light and Kathleen E. Foote, Deputy Attorneys General, Gil Garcetti, District Attorney (Los Angeles), Thomas A. Papageorge and Alan Yengoyan, Deputy District Attorneys, as Amici Curiae on behalf of Petitioner and Real Party in Interest Weil Insurance Agency, Inc.

James D. Biernat, Howard, Rice, Nemerovski, Canady, Robertson & Falk, Jerome B. Falk, Jr., H. Joseph Escher III, Pauline E. Calande, Theresa M. Beiner, Sheppard, Mullin, Richter & Hampton, Dale E. Fredericks, Darryl M. Woo, Adams, Duque & Hazeltine, James L. Moak, David R. Shane, Ann Sparkman, Musick, Peeler & Garrett, R. Joseph De Briyn, Jon C. Cederberg, Crosby, Heafey, Roach & May, Roaul D. Kennedy, Weld, Freeland, Cooper & LeHocky, Mark LeHocky, Robert R. Verber, Peter E. Davis, Sidley & Austin, Peter I. Ostroff, Elroy H. Wolff, Munger, Tolles & Olson, Charles D. Siegal, Allison B. Stein, Parcel, Mauro, Hultin & Spaanstra and Malcolm Wheeler for Petitioners and Real Parties in Interest Manufacturers Life Insurance Company et al.

Buchalter, Nemer, Fields & Younger, Marcus M. Kaufman, Hugh A. Linstrom, Morrison & Foerster, James J. Garrett, Lori A. Schechter, Thelen, Marrin, Johnson & Bridges, Steven L. Hock, Hilary N. Rowen, Marta R.

Pierpoint, Richard E. Barnsback and Philip E. Stanno as Amici Curiae on behlaf of Petitioners and Real Parties in Interest Manufacturers Life Insurance Company et al.

No appearance for Respondent.

## OPINION

BAXTER, J.—We granted review in this matter to consider the holding of the Court of Appeal that the Unfair Insurance Practices Act (Ins. Code, § 790 et seq.) does not supersede or displace insurance-industry-related claims under the Cartwright Act (Bus. & Prof. Code, §§ 16720-16770) and/or the Unfair Competition Act (Bus. & Prof. Code, § 17200 et seq.) Simply stated, the issue is whether life insurance, which was not affected by Proposition 103, the 1988 initiative measure which expressly declares that other lines of insurance are subject to antitrust and unfair business practice laws (Ins. Code, § 1861.03, subd. (a)), is exempt from such laws.

We conclude that the decision of the Court of Appeal should be affirmed. Contrary to dictum in three decisions subsequent to *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305 [70 Cal.Rptr. 849, 444 P.2d 481] (*Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994, 999, fn. 2 [110 Cal.Rptr. 470]; *Liberty Transport, Inc.* v. *Harry W. Gorst Co.* (1991) 229 Cal.App.3d 417 [280 Cal.Rptr. 159]; *Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953 [201 Cal.Rptr. 379]), this court did not hold there that the Legislature had granted the insurance industry a general exemption from state antitrust and unfair business practices statutes. Rather, the Legislature intended that rights and remedies available under those statutes were to be cumulative to the powers the Legislature granted to the Insurance Commissioner to enjoin future unlawful acts and impose sanctions in the form of license and certificate suspension or revocation when a member of the industry violates any applicable statute, rule, or regulation. (See, e.g., Ins. Code, §§ 704, 704.5, 790.05, 790.07, 10433, 10435, 10450.6, 12900 et seq.)

I

*Background*

These related petitions for writ of mandate are directed to several counts in the underlying superior court action by plaintiff Weil Insurance Agency, Inc. (Weil). The defendants are Manufacturers Life Insurance Company,

other insurers, competing insurance brokers, trade associations, and an officer of one group of competing brokers (defendants). In the counts at issue here, Weil's complaint asserted statutory causes of action for violation of Business and Professions Code sections 16720, 16721.5, and 17200, and Insurance Code section 790.03.[1] Business and Professions Code sections 16720 and 16721.5 are provisions of the Cartwright Act. Business and Professions Code section 17200 is part of the Unfair Competition Act (UCA). Section 790.03 is part of the Unfair Insurance Practices Act (UIPA).

The complaint alleged[2] that Weil operated a successful insurance brokerage and consulting business in which it advised attorneys regarding settlement annuities. After Weil disclosed to those clients the actual costs of such annuities, the defendant insurance companies boycotted plaintiff's brokerage and conspired to prevent claimants from obtaining the information Weil provided. Allegedly they did so because the information plaintiff provided to attorneys and injury victims had an adverse impact on the ability of liability insurance carriers to settle personal injury claims below their cash settlement value. The complaint alleged that pursuant to the conspiracy, defendants denied injury victims and their attorneys critical information regarding annuities used to fund settlement of their claims; boycotted any broker, agent or consultant who provided information and/or consulting services to injury victims and their attorneys; refused to appoint brokers and consultants who did provide the information and/or services; prohibited their brokers, agents and consultants from providing the information and services; falsely disparaged brokers who did provide the information; gave bogus reasons for not dealing with brokers who offered consulting services to injury victims and their attorneys; threatened and intimidated brokers to coerce compliance with their scheme; and caused the trade association (defendant National Structured Settlements Trade Association) to adopt and enforce rules, guidelines and policies in furtherance of their scheme.

The purpose of these actions was to depress the cost of personal injury settlements below their cash value. The complaint alleged that, in furtherance of the conspiracy, and in retaliation for plaintiff's interference with it through its consulting and brokerage practices and efforts to educate the bar and insurance industry through articles authored by one of plaintiff's senior executives, defendants boycotted Weil and used coercion, intimidation, threats, and false disparagement of Weil to cause structured settlement

---

[1] Unless otherwise indicated, all statutory references are to the Insurance Code.

[2] For purposes of this review, we assume that all well-pleaded material allegations of the complaint are true. (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 727, fn. 2 [1 Cal.Rptr.2d 543, 819 P.2d 1].)

annuity brokers and agents with whom Weil did business to discontinue that relationship, and to cause other annuity brokers to refuse all business dealings with Weil. Plaintiff's settlement annuity business was destroyed as a result of defendants' conduct.

The complaint asserted that the conduct also harmed the public in that it constituted price fixing, concerted output restriction, and a boycott, all of which were claimed to be per se violations of the Cartwright Act; its requirement that brokers refrain from dealing with Weil was a per se violation of the Cartwright Act; it constituted an unreasonable restraint intended to monopolize the business of insurance in violation of the UIPA; and it therefore involved unlawful, unfair or fraudulent business practices which violated the UCA.

The trial court sustained defendants' demurrers to Weil's first amended complaint with leave to amend as to the Cartwright Act causes of action, but overruled the demurrers with respect to the UCA and UIPA claims. Defendants then petitioned for a writ of mandate to compel the trial court to sustain the demurrers to those counts and the Court of Appeal issued an order directing the real party in interest to show cause why the peremptory writ should not issue as prayed.

Weil then filed an amended complaint in which it again attempted to state the Cartwright Act claims. The life insurance defendants demurred to the second amended complaint on the ground that the complaint failed to state a cause of action as to those counts. They argued in support of the demurrers that the Cartwright Act had been superseded in the business of insurance by Insurance Code section 790.03, a provision of the UIPA. It relied for that claim on *Chicago Title Ins. Co.* v. *Great Western Financial Corp., supra*, 69 Cal.2d 305, 322 (hereafter *Chicago Title*), and *Greenberg* v. *Equitable Life Assur. Society, supra*, 34 Cal.App.3d 994. The trial court sustained those demurrers, and Weil petitioned for writ of mandate to compel the court to overrule the demurrers.

After the Court of Appeal summarily denied Weil's petition, this court granted review and transferred the matter back to the Court of Appeal with directions to issue an alternative writ. Although the two petitions had not previously been formally consolidated, the Court of Appeal joined them for purposes of argument and opinion. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 539, pp. 528-529; cf. *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 165, fn. 3 [188 Cal.Rptr. 104, 655 P.2d 306].)

## II

### *The Court of Appeal Opinion*

In a thorough and thoughtful review of both the statutory language of the UIPA and its history, and the terms of the UCA, the Court of Appeal held that the UIPA does not supersede or displace actions under the Cartwright Act, and that a private cause of action may be stated under the UCA for violations of the Cartwright Act, but not for violations of the UIPA. We summarize the court's reasoning below.

### A. *Cartwright Act.*

The Court of Appeal reasoned that the UIPA was enacted pursuant to the authority of the McCarran-Ferguson Act, 15 United States Code sections 1011-1015, in order to displace federal law which might otherwise have governed insurance trade practices, displacing the law of any state which did not generally proscribe the same industry conduct.[3] In so doing the Legislature did not intend to shield the industry from otherwise applicable state law. The intent to preserve existing rights and remedies for unlawful business practices in the insurance industry was clear, as the Legislature had expressly provided in the UIPA, in section 790.09, that "[n]o order to cease and desist under [the UIPA] directed to any person or subsequent administrative or judicial proceedings to enforce the same shall in any way relieve or absolve such person from any administrative action against the license or certificate of such person, civil liability or criminal penalty under the laws of this State arising out of the methods, acts or practices found unfair or deceptive." The original UIPA bill did not contain this stipulation, and instead preserved only preexisting powers of the commissioner to enforce penalties, fines or forfeitures (Assem. Bill No. 1530 (1959 Reg. Sess.) § 1; see now § 790.08),[4] but from the first amended version of the bill until its passage, the section preserving existing remedies had been included. (Assem. Amend. to Assem. Bill No. 1530 (1959 Reg. Sess.) Apr. 8, 1959; Assem. Amend. to Assem. Bill No. 1530 (1959 Reg. Sess.) May 6, 1959;

---

[3]Section 790 expresses that intent: "The purpose of this article is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the Act of Congress of March 9, 1945 (Public Law 15, Seventy-ninth Congress), by defining, or providing for determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined."

[4]Section 790.08: "The powers vested in the commissioner in this article shall be additional to any other powers to enforce any penalties, fines or forfeitures, denials, suspensions or revocations of licenses or certificates authorized by law with respect to the methods, acts and practices hereby declared to be unfair or deceptive."

Sen. Amend. to Assem. Bill No. 1530 (1959 Reg. Sess.) June 11, 1959; Stats. 1959, ch. 1737, § 1, p. 4191.)

It is probable that the inclusion of section 790.09 reflected the understanding of the Legislature that adoption of the UIPA would make no change in existing law. The Legislative Analyst stated in an analysis of the UIPA bill that it "makes no substantive change in existing law." (Ops. Legis. Analyst, Analysis of Assem. Bill No. 1530 (May 20, 1959) p. 1.)

Moreover, the Court of Appeal observed, the Legislature had included specific provisions exempting specified classes of insurance from other laws. (E.g., §§ 795.7 [senior citizens health insurance], 1860.1 [casualty insurance rates], 11758 [workers' compensation], 12414.26 [title insurance].) Had the UIPA created a general exemption of insurance from the Cartwright Act and other laws, none of these provisions would have been necessary. Since the Legislature thereby demonstrated that it was aware of the need to create an exemption, and did not do so for other classes of insurance, the UIPA did not displace existing rights and remedies for unlawful business practices in the insurance industry, among them the Cartwright Act. Finding such displacement would necessarily be to find a pro tanto repeal of the Cartwright Act notwithstanding the rule that such repeals are disfavored and will be recognized only when the circumstances reflect a clear legislative intent to do so. (See *Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 379 [20 Cal.Rptr.2d 330, 853 P.2d 496]; *Kennedy Wholesale, Inc.* v. *State Bd. of Equalization* (1991) 53 Cal.3d 245, 249 [279 Cal.Rptr. 325, 806 P.2d 1360]; *Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 419-420 [261 Cal.Rptr. 384, 777 P.2d 157]; *Hays* v. *Wood* (1979) 25 Cal.3d 772, 784 [160 Cal.Rptr. 102, 603 P.2d 19]; *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].)

B. *UCA.*

The Court of Appeal recognized that the UIPA does not create a private right of action for violations of its provisions (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] (*Moradi-Shalal*)), and that a plaintiff may not "plead around" that limitation by casting a cause of action based on a violation of the UIPA as one brought under the UCA. The Court of Appeal upheld the overruling of defendants' demurrers to the UCA cause of action, however, reasoning that a UCA cause of action may be predicated on a violation of the Cartwright Act. That followed because the UCA defines "unfair competition" as any "unlawful,

unfair or fraudulent business act or practice" (Bus. & Prof. Code, § 17200), and permits any person to sue for injunctive and restitutionary relief for such conduct on behalf of the general public. (Bus. & Prof. Code, §§ 17204, 17203.) A violation of the Cartwright Act is such a practice. (*People* v. *National Association of Realtors* (1981) 120 Cal.App.3d 459, 473-475 [174 Cal.Rptr. 728], later app. (1984) 155 Cal.App.3d 578 [202 Cal.Rptr. 243]; *B.W.I. Custom Kitchen* v. *Owens-Illinois, Inc.* (1987) 191 Cal.App.3d 1341, 1348, fn. 6 [235 Cal.Rptr. 228].)

### III

### *Discussion*

Defendants contend that the Court of Appeal erred. Simply stated, their position is that, except to the extent that Proposition 103 applies, the insurance industry is exempt from any antitrust and unfair business practices legislation other than the UIPA. Therefore, insurers are subject only to the regulatory authority of the Insurance Commissioner and there is no private right of action to redress injuries brought about by combinations in restraint of trade and other unfair business practices in the insurance industry. They argue that in *Chicago Title* and all subsequent cases the courts have consistently held that the Cartwright Act does not apply to insurance industry practices, that stare decisis counsels adherence to those decisions, and that the *Chicago Title* decision and its progeny have been ratified by subsequent legislation, including Proposition 103. They also argue that the Court of Appeal has misconstrued section 790.09, the UIPA provision which the court held preserves existing rights and remedies. That section, they argue, establishes only that administrative cease-and-desist orders do not preclude other administrative action related to the same conduct. Finally, they claim that permitting a UCA action for an unfair insurance practice that is prohibited by the UIPA would "seriously compromise" this court's holding in *Moradi-Shalal, supra,* 46 Cal.3d 287, that there is no private cause of action for violations of section 790.03 even if the conduct also constitutes a violation of the Cartwright Act.

A. *Chicago Title.*

In reaching its conclusion that, in section 790.09, the UIPA expressly preserved remedies for unlawful conduct in the insurance industry which existed at the time the UIPA was adopted, the Court of Appeal rejected defendants' argument that this court in fact held in *Chicago Title* that the UIPA exempted insurance from the Cartwright Act and other antitrust related remedies, a proposition which *Greenberg* v. *Equitable Life Assur.*

*Society, supra,* 34 Cal.App.3d 994 (*Greenberg*) states was the holding of *Chicago Title.* The Court of Appeal expressed the view that the statement in *Chicago Title* on which defendants relied was dictum, and found it to be neither compelling nor persuasive authority.

The language in *Chicago Title* to which defendants and the Court of Appeal refer appears, italicized, in this passage: "The Cartwright Act, as previously mentioned, is similar in spirit and substance to the federal legislation encompassed by the Sherman (15 U.S.C.A. §§ 1-7) and Clayton Acts (15 U.S.C.A. §§ 12-27). Private individuals, businesses, or corporations have, in the absence of express statutory authority, no standing to enforce such regulatory statutes. (Cf. *Show Management* v. *Hearst Publishing Co.,* 196 Cal.App.2d 606, 612-616 [16 Cal.Rptr. 731]; *West Coast Poultry Co.* v. *Glasner,* 231 Cal.App.2d 747 [42 Cal.Rptr. 297]; *Hudson* v. *Craft,* 33 Cal.2d 654 [204 P.2d 1, 7 A.L.R.2d 696].) The Cartwright Act however follows federal policy which expressly contemplates private civil litigation based upon statutes regulating antitrust and unfair trade practices, including illegitimate pricing practices. (Bus. & Prof. Code, §§ 17040-17051.)

"*These statutes and the common law which once constituted the 'protection of the public against combinations in restraint of the insurance trade'* (*Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34, 45 [172 P.2d 867]) *are now expressly superseded and contravened by the specific provisions of the Insurance Code.* Counts three (secret rebate), four (discriminatory pricing) and seven (unlawful rebate) clearly concern the regulation of rates charged by title insurers and title companies, and rate regulation has traditionally commanded administrative expertise applied to controlled industries. (Ins. Code §§ 12404-12412; *County of Placer* v. *Aetna Cas. etc. Co.,* 50 Cal.2d 182 [323 P.2d 753]; *Division of Labor Law Enforcement* v. *Moroney,* 28 Cal.2d 344 [170 P.2d 3].)" (*Chicago Title, supra,* 69 Cal.2d 305, 322-323, italics added.)

Defendants argue that the italicized statement is not dictum and that, properly understood, *Chicago Title* held that Cartwright Act remedies for boycotts and other unlawful practices in the insurance industry had been superseded by the UIPA in section 790.03, subdivision (c). We need not decide here whether the passage to which the Court of Appeal referred was dictum or a holding of the court, however, as the passage did not refer to the UIPA. The Insurance Code provisions which *Chicago Title* cited are not part of the UIPA and are not in issue here.

Even assuming arguendo that the reference in *Chicago Title* to the superseding impact of Insurance Code provisions was not dictum, the holding was far narrower than defendants suggest.

Consideration of the nature of the action in *Chicago Title* is crucial to understanding that case. It arose on demurrers to the various causes of action stated by the plaintiffs. They sought injunctive relief and damages for unfair trade practices and combinations in restraint of trade, including a boycott of the plaintiffs' business. Plaintiffs were "underwritten title companies" that did title searches and examinations and prepared certificates or abstracts of title for title insurers, and delivered the title insurance polices issued by the insurers. (See § 12402.) In the counts at issue in the decision, plaintiffs alleged that the defendants[5] violated antitrust laws, and engaged in price discrimination and unfair trade practices. They accused the defendants of conspiring to provide rebates in order to induce customers to transfer business to defendants.

After explaining that the counts directed to insurance rates could not state a cause of action because specific provisions of the Insurance Code (which are not part of the UIPA) gave the Insurance Commissioner authority over rates, the court went on to say that several other counts did not state a cause of action and that the factual allegations failed to support the charge. The Court of Appeal concluded for that reason that *Chicago Title* held only that the allegations of the complaint were insufficient, and that we had not held that the UIPA superseded the Cartwright Act insofar as insurance industry practices are concerned.

This court adopted, with modifications, the decision of the Court of Appeal in *Chicago Title*. Defendants argue that the court necessarily had the UIPA in mind when it stated that the Cartwright Act had been superseded by the specific provisions of the Insurance Code and that the statement referred to all of the counts of the complaint that were directed to insurance company defendants. They base their argument on a passage in the Court of Appeal opinion which, they assert, addressed the jurisdiction of the Insurance Commissioner. This court deleted that passage when it adopted the opinion of the Court of Appeal in *Chicago Title*, however.

Apart from the impropriety of citing and relying on a vacated Court of Appeal opinion, this argument necessarily lacks merit. The opinion of this

---

[5]The named defendants were: Lehman Brothers, an investment firm; Great Western Financial and Financial Corporation of America, financial holding companies owned by Lehman Brothers; Great Western Savings and Loan Association; Security Title Insurance Company; American Title Company; Summit Title Company; and Sherwood Escrow Company. Many of these defendants were not engaged in the insurance industry and thus did not hold certificates and/or licenses which the commissioner could revoke. The commissioner does have the power to seek an injunction against anyone who is violating or about to violate any provisions of the Insurance Code or regulations issued thereunder. (§ 12928.6.)

Plaintiffs competed directly with Summit Title Company and American Title Company for the business of title insurance companies.

court in *Chicago Title* is the sole source of decision and the reasoning underlying the decision. Moreover, deletion of a passage from a Court of Appeal opinion that is adopted by this court may reflect this court's unwillingness to adopt the view of the Court of Appeal on the deleted matter.

Defendants also argue that this court's analysis of the adequacy of the allegations of the *Chicago Title* complaint to state Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.) violations in counts unrelated to ratemaking addressed only claims made against defendants who were not insurance companies. Therefore, that discussion does not imply that in other circumstances a cause of action for conduct made unlawful by statutes other than the UIPA could be stated against an insurer subject to that act. The discussion in point involved two counts alleging a boycott: "Appellants contend in counts six and eight that the conduct of the Sherwood and Great Western groups, respectively, infringes Business and Professions Code section 17046 [part of the Unfair Practices Act]. The attempted application of this section to the facts evidences appellants' misinterpretation of the nature of a boycott. The allegation of boycott cannot be supported in this instance because everyone has the unrestricted right to select customers and sources of supply. (Bus. & Prof. Code, § 17042; *A.B.C. Distributing Co.* v. *Distillers Distributing Corp.*, 154 Cal.App.2d 175, 189 [316 P.2d 71].) There is not, and could not be an allegation that it is unreasonable for Sherwood to buy through Summit, or for Great Western Financial to require its subsidiaries in the saving and loan or escrow business to engage the services of the title company in which it likewise has an interest. Not only are vertical distribution agreements in this instance contemplated by the Insurance Code, but 'it seems clear to us that vertical integration, as such without more, cannot be held violative of the Sherman Act.' [Citation.] Neither do exclusive dealing arrangements constitute boycotts . . . ." (*Chicago Title, supra*, 69 Cal.2d 305, 323-324.)

This passage contemplates the possibility of a Cartwright Act or Unfair Practices Act claim, and rejects the claim stated by plaintiffs only because the facts alleged did not constitute a violation of either act.

Defendants' argument that these counts were not directed against insurance companies and that the discussion anticipates Cartwright Act or Unfair Practices Act claims only against persons or entities that are not engaged in the business of insurance is not supported by the opinion. The "Sherwood group" to which the court referred included both Summit Title Company and Sherwood Escrow Company. (*Chicago Title, supra*, 69 Cal.2d 305, 318.) Summit, an underwritten title company (§ 12340.5 [former § 12402]) was

subject to licensing and regulation under provisions of the Insurance Code. (§ 12389.2 [former § 12396, added by Stats. 1965, ch. 361, § 2, p. 1467].)

Therefore, if the *Chicago Title* statement the Court of Appeal here deemed dictum was instead a holding of this court, the holding was much narrower than defendants claim. The court said only that sections of the Insurance Code that are not part of the UIPA superseded other antitrust and unfair competition laws *insofar as they might apply to conduct related to rates and ratemaking* which are governed by specific provisions of the Insurance Code that authorize some practices and as to others gave the Insurance Commissioner authority to determine the propriety of the conduct. None of the Insurance Code provisions cited by the court in *Chicago Title* is part of the UIPA and this court did not mention the UIPA in the *Chicago Title* opinion. Nor did the court say that in section 790.09 the UIPA reflects legislative intent to displace remedies created by the Cartwright Act or other statutes directed to unfair trade practices.

Had the court concluded in *Chicago Title* that the UIPA displaced preexisting legislation in the field and that the insurance industry was thereby exempted from antitrust and other unfair business practices remedies applicable to other industries, there would have been no need to explain in detail, as the court did (*Chicago Title, supra,* 69 Cal.2d at pp. 324-325), why the allegations supporting the remaining counts of the complaint were insufficient for other reasons to state causes of action under the Cartwright Act or the Unfair Practices Act.[6]

B. *Legislative history and administrative construction of the UIPA.*

Defendants offer a construction of section 790.09 which, they argue, demonstrates that in adopting the UIPA, the Legislature intended that only the Insurance Commissioner be authorized to remedy unlawful conduct

---

[6]Possibly the most telling rebuttal to defendants' claim that *Chicago Title* held that antitrust and unfair competition statutes other than the UIPA did not apply to the insurance industry is found by negative implication in the dissent of Justice Mosk. (*Chicago Title, supra,* 69 Cal.2d 305, 328 (dis. opn. of Mosk, J.).) In that dissent, Justice Mosk disagreed with the court's conclusion that the complaint did not state a cause of action under the Cartwright Act. The reasoning is directed exclusively to the allegations necessary to plead such a cause of action. Had the court held that the Cartwright Act was superseded by the UIPA, as defendants argue, the absence from the dissent of any reference to or acknowledgment of that holding would be quite remarkable.

Moreover, had the majority held that the UIPA precluded any Cartwright Act claim, the opinion would certainly have responded to the dissent by observing that in light of the holding on the effect of the UIPA, the adequacy of the allegations pleading those causes of action was irrelevant.

by insurance companies. They argue that in providing that a cease-and-desist order does not relieve a person of civil or criminal liability, section 790.09 simply gives nonpreclusive effect to administrative cease and desist orders that are followed by further action by the Insurance Commissioner, and the section has no relevance to the issues in this case. In their view section 790.09 means only that the issuance of a cease and desist order by the Insurance Commissioner does not preclude other action by the commissioner directed to the same impermissible trade practice. Defendants argue that the Court of Appeal erred in its construction of section 790.09 when that court concluded that the section stated that the commissioner's issuance of a cease and desist order shall not "obstruct or impede" the imposition of civil liability or criminal penalties. They perceive a crucial difference in the actual language of the statute which provides that such orders do not "relieve or absolve" a person from imposition of civil liability or criminal penalties. That distinction, defendants claim, precludes viewing section 790.09 as a "savings clause" and demonstrates that its purpose is merely to provide that cease and desist orders do not have a preclusive effect.

We agree that the definitions of the words used in the two phrases differ. "Absolve" is defined as "to set free from an obligation or the consequences of guilt." (Webster's New Collegiate Dict. (1981) p. 969.) "Obstruct" means "to block or close up by an obstacle," while "impede" means "to interfere with or slow the progress of." (*Id.* at p. 570.) We fail to find in those distinctions the crucial difference noted by defendants and do not agree with defendants that "relieve or absolve" is beyond question language of res judicata and claim preclusion. Defendants cite no statute or case using those terms in reference to res judicata and claim preclusion and we are aware of none. The definition of "relieve and absolve" offered by defendants leads us to the same conclusion reached by the Court of Appeal. The issuance of a cease-and-desist order enjoining future unlawful conduct does not free the offender from the civil obligation or criminal guilt incurred as a result of the unlawful conduct he has engaged in prior to issuance of the order.

Defendants offer no satisfactory answer to the observation of the Court of Appeal that as defendants construe section 790.09, its reference to civil and criminal liability becomes meaningless. The section provides that a cease-and-desist order to a person does not "relieve or absolve such person from any administrative action against the license or certificate of such person, *civil liability or criminal penalty* under the laws of this State arising out of the methods, acts or practices found unfair or deceptive." (Italics added.) The Insurance Commissioner has no power to initiate a criminal proceeding

against, or an action to impose civil liability on, a person who engages in unfair trade practices. The authority of the commissioner is limited to enjoining future unlawful conduct and suspending or revoking a license or certificate. (*Shernoff* v. *Superior Court* (1975) 44 Cal.App.3d 406, 409 [118 Cal.Rptr. 680].)

That part of section 790.09 which preserves civil and criminal liability would be meaningless if defendants' proposed construction of the section were accepted. Well-established canons of statutory construction preclude a construction which renders a part of a statute meaningless or inoperative. In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all. (Code Civ. Proc., § 1858.) Pursuant to this mandate we must give significance to every part of a statute to achieve the legislative purpose. (*Schwab* v. *Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 435 [280 Cal.Rptr. 83, 808 P.2d 226]; *J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 36-37 [160 Cal.Rptr. 710, 603 P.2d 1306].)

Not only is the construction defendants suggest inconsistent with the language of section 790.09, but a conclusion that the Legislature intended by section 790.09 to displace Cartwright Act, Unfair Practices Act, and UCA remedies would be contrary to consistent administrative construction of the act and available legislative history. It would also be contrary to the conclusion of courts of other states which have adopted the same or similar legislation in order to take advantage of the McCarran-Ferguson Act exemption from application of the federal law that existing rights and remedies are preserved by this provision.

The Cartwright Act (Stats. 1941, ch. 526, § 1, p. 1834) and the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq., also added by Stats. 1941, ch. 526, § 1, p. 1834) predate the UIPA (Stats. 1959, ch. 1737, § 1, p. 4191). The Legislature was aware that almost all of the practices which the UIPA prohibits in section 790.03 and defines as "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance" were already proscribed under those acts.[7] When the UIPA was introduced as Assembly Bill No. 1530 in 1958, its acknowledged purpose was to preclude

---

[7]Records of the Insurance Commissioner of which the Court of Appeal took judicial notice reflect that in a memorandum to the Insurance Commissioner at the time Assembly Bill No. 1530 was introduced, his chief assistant advised that the acts proscribed by the bill were

federal jurisdiction over the business of insurance. Section 790 states that purpose: "The purpose of this article is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the Act of Congress of March 9, 1945 (Public Law 15, Seventy-ninth Congress), by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." Lower courts have repeatedly recognized that the purpose of the UIPA is to displace federal law, not existing state law in the field of antitrust and unfair competition. (See, e.g., *Karlin* v. *Zalta, supra*, 154 Cal.App.3d 953, 966; *American Internat. Group, Inc.* v. *Superior Court* (1991) 234 Cal.App.3d 749, 756-758 [285 Cal.Rptr. 765].)

Moreover, as the Court of Appeal recognized, nothing in the history of the UIPA reflects legislative intent to bring about a pro tanto repeal of the Cartwright Act or the UCA.

At the time the bill was passed the Legislative Analyst expressed the view that adoption of the UIPA made no change in existing law, stating: "The bill makes no substantive change in existing law as the insurance commissioner has in the past regulated such matters under his general powers." (Ops. Legis. Analyst, Analysis of Assem. Bill No. 1530 (May 20, 1959) p. 1.) That this understanding of the UIPA was shared by the Legislature is confirmed by that body's enactment of the specific exemptions from antitrust legislation noted above, exemptions that would have been unnecessary had the UIPA effected a blanket exemption of the insurance industry from the rights and remedies available under the Cartwright Act, UCA and other legislation.[8]

---

covered by other statutes, and in particular the acts of boycott, threat, or intimidation were proscribed by the Cartwright Act. The chief assistant expressed concern that notwithstanding other sections of the UIPA, it could be construed to preclude use of the sanctions available under existing law. That concern led to the inclusion of section 790.09 in the proposed legislation.

[8]The Insurance Commissioner, whose office proposed inclusion of section 790.09 in the UIPA to ensure that existing remedies would be preserved, continues to take the position that the Legislature did not intend, by adoption of the UIPA, to supersede the Cartwright Act or any other state laws. Appearing as amicus curiae in support of plaintiff, the commissioner expresses his belief that regulatory enforcement by his office is complementary to the Cartwright Act and the UCA. Both the commissioner and the California District Attorneys Association, which also appears as amicus curiae, express the belief that the public interest is served by vigorous enforcement of all three statutes. The California District Attorneys Association asserts that actions under the UCA have become the principal law enforcement instrument of prosecutors in the areas of consumer protection and unfair competition, with more than 200 such actions being prosecuted annually. The UCA is also the basis for

As the Court of Appeal noted, section 790.09 was patterned after a draft of the Model Unfair Insurance Practices Act proposed by the National Association of Insurance Commissioners (NAIC) (exhibit B to Rep. of Joint Com. on Federal Legislation, etc. (Jan. 24, 1947) § 8(d); Proceedings, 78th Ann. Sess., NAIC (1947)) p. 398),[9] and has been construed in other states which have adopted the same or substantially similar statute as preserving remedies already available at the time the UIPA was adopted in those states. (See *Attorney General of Tex.* v. *Allstate Ins. Co.* (Tex.App. 1985) 687 S.W.2d 803, 805; *Application of Kusher* (1981) 108 Misc. 2d 329 [437 N.Y.S.2d 889, 890-891]; *Fischer, etc.* v. *Forrest T. Jones & Co.* (Mo. 1979) 586 S.W.2d 310, 313, 315; *Dodd* v. *Commercial Union Ins. Co.* (1977) 373 Mass. 72 [365 N.E.2d 802, 805]; *Correa* v. *Pennsylvania Mfrs. Ass'n. Ins. Co.* (D.Del. 1985) 618 F.Supp. 915, 926; *Grand Ventures, Inc.* v. *Whaley* (Del.Super.Ct. 1992) 622 A.2d 655, 664; *Mead* v. *Burns* (1986) 199 Conn. 651 [509 A.2d 11, 18]; *Skinner* v. *Steele* (Tenn.App. 1987) 730 S.W.2d 335, 337-338; *Hardy* v. *Pennock Ins. Agency, Inc.* (1987) 365 Pa. Super. 206 [529 A.2d 471, 479]; *St. ex rel. Stratton* v. *Gurley Motor Co.* (1987) 105 N.M. 803 [737 P.2d 1180, 1183]; *Phillips* v. *Integon Corp.* (1984) 70 N.C.App. 440 [319 S.E.2d 673, 675]; *Grams* v. *Boss* (1980) 97 Wis.2d 332 [294 N.W.2d 473, 480].)[10] By contrast, no court has construed a version of section 790.09 in the manner suggested by defendants as intended only to avoid a possible res judicata effect of "merger" of other administrative remedies into an action leading to a cease-and-desist order.

 The presumption against finding a pro tanto repeal of a statute in the enactment of subsequent legislation on the subject is so strong that the court will do so only if the later statute revises the earlier in a manner that

prosecutions brought to supplement provisions of the Health and Safety Code and the Labor Code to remedy public health and sanitation and public safety violations, and its use to supplement other provisions of law has been upheld repeatedly. (See, e.g., *People* v. *McKale* (1979) 25 Cal.3d 626, 632 [159 Cal.Rptr. 811, 602 P.2d 731]; *People* v. *Los Angeles Palm, Inc.* (1981) 121 Cal.App.3d 25, 33 [175 Cal.Rptr. 257]; *People* v. *Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509 [206 Cal.Rptr. 164, 53 A.L.R.4th 661].)

[9] The request of plaintiff that this court take judicial notice of this and other materials related to the adoption of the UIPA, much of which was considered by the Court of Appeal, is granted. Pursuant to Evidence Code section 459, a reviewing court must take judicial notice of any matter that was properly noticed by the trial court or of which the trial court was required to take notice under Evidence Code section 451. The reviewing court may also take judicial notice of matters specified in Evidence Code section 452.

[10] Illinois, New Jersey, and Washington have enacted express exemptions from state antitrust law for those activities of insurers which are regulated by their insurance commissioners and/or authorized by statute. (Ill. Rev. Stat. ch. 38, par. 60-5 (1969); N.J. Stat. Ann. § 56:9-5, subd. (b)(4); Wash. Rev. Code § 19.86.170; see *B & L Pharmacy, Inc.* v. *Metropolitan Life Ins. Co.* (1970) 46 Ill.2d 1 [262 N.E.2d 462]; *Washington Osteo. Med. Ass'n* v. *King Co. Med. S. Corp.* (1970) 78 Wn.2d 577 [478 P.2d 228].)

necessarily implies legislative intent to substitute the new statute for the older. (*Roberts* v. *City of Palmdale, supra,* 5 Cal.4th 363, 379.) Neither the language of the UIPA nor its history suggests that the Legislature intended by its enactment to abolish the Cartwright Act and UCA remedies for conduct which the UIPA also proscribes.

C. *Stare decisis.*

 Invoking the principles of stare decisis, defendants next argue that the court should not depart from the construction of the UIPA that courts have followed since this court's decision in *Chicago Title.* As we have explained above, however, the court did not construe the UIPA or section 790.09 of that act in *Chicago Title,* and has never held that the UIPA created a wholesale exemption from the Cartwright Act and UCA remedies for the insurance industry. Those acts do not create such an exemption, and, since the state scheme of regulation of the insurance industry is not wholly inconsistent with their application, no exemption may be implied. (*Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 922 [221 Cal.Rptr. 575, 710 P.2d 375].)

 Defendants also rely on the Court of Appeal interpretation of *Chicago Title* in *Greenberg, supra,* 34 Cal.App.3d 994, 999, footnote 2, which, they assert, was accepted by this court in *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] (*Royal Globe*). Defendants recognize that *Royal Globe* was overruled in *Moradi-Shalal,* but argue that *Moradi-Shalal* did not address the claimed insurance industry exemption from antitrust and unfair competition laws, an exemption which, they assert, other courts have continued to recognize since *Moradi-Shalal* was decided.

In *Greenberg, supra,* 34 Cal.App.3d 994, the plaintiff sought to state a cause of action under section 770[11] on behalf of himself and a similarly situated class. The complaint alleged that the defendant insurance company, as security for the balance on home loans it made, required the borrower to

[11]Section 770: "No person engaged in the business of financing the purchase of real or personal property or of lending money on the security of real or personal property and no trustee, director, officer, agent or other employee, or affiliate of, any such person shall require, as a condition precedent to financing the purchase of such property or to loaning money upon the security thereof, or as a condition prerequisite for the renewal or extension of any such loan or for the performance of any other act in connection therewith, that the person from whom such purchase is to be financed or to whom the money is to be loaned or for whom such extension, renewal or other act is to be granted or performed negotiate any insurance or renewal thereof covering such property through a particular insurance agent or broker."

obtain from the company a policy of whole life insurance equal to the loan balance. It was alleged that comparable insurance was available from other insurance companies at a lower premium and that the "tie-in sale" violated section 770. On plaintiff's appeal after the trial court had sustained a demurrer without leave to amend, the Court of Appeal held that while no cause of action had been stated under that section, leave to amend should have been granted as it appeared that plaintiff could state a UIPA cause of action under subdivision (c) of section 790.03 for an unfair business practice as that subdivision should be construed in light of similar statutes prohibiting activities in restraint of trade. In an accompanying footnote the *Greenberg* court stated: "In *Chicago Title Ins. Co. v. Great Western Financial Corp.*, 69 Cal.2d 305 [70 Cal.Rptr. 849, 444 P.2d 481], our Supreme Court, in dealing with a demurrer to a complaint alleging restraint of trade by an insurance company, stated that the Cartwright Act which encompasses the general antitrust law of California is 'expressly superseded and contravened by the specific provisions of the Insurance Code.' (69 Cal.2d at p. 322.)" (*Greenberg, supra*, 34 Cal.App.3d 994, 999, fn. 2.)

Contrary to defendants' characterization of our discussion of *Greenberg* in *Royal Globe, supra*, 23 Cal.3d 880, we did not state there that the *Greenberg* court had correctly interpreted *Chicago Title* as precluding application of the Cartwright Act to all forms of anticompetitive conduct by insurers. Our opinion said only that the *Greenberg* court had "determined that the general antitrust prohibitions of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.) were inapplicable to insurance companies and that only section 790.03 prohibits insurers from engaging in anticompetitive activity." (*Royal Globe, supra*, 23 Cal.3d 880, 886-887.) That statement was made in response to an argument that section 790.09 did not provide affirmative authority for filing a civil action for violation of the UIPA. We said that this argument was contrary to the *Greenberg* holding that section 790.03 did afford the basis for a civil suit. We did not hold, as defendants claim, that the *Greenberg* interpretation of *Chicago Title* was correct. That question was not before us in *Royal Globe*.

Defendants' claim that the *Greenberg* interpretation of *Chicago Title* has been "affirmed by all subsequent case authorities" does not withstand examination. Other than *Moradi-Shalal, supra*, 46 Cal.3d 287, which, as we have explained, does not approve the *Greenberg* interpretation, defendants cite only three cases in support of that proposition. None does so. The court quoted the *Greenberg* statement in *Karlin v. Zalta, supra*, 154 Cal.App.3d 953, but in *Karlin* the court concluded that plaintiffs' claims were not governed by the Insurance Code and, as defendants concede, the plaintiffs

did not state a Cartwright Act claim. Thus, the court had no occasion to apply the *Greenberg* formulation of *Chicago Title*. In *Liberty Transport, Inc.* v. *Harry W. Gorst Co.*, *supra*, 229 Cal.App.3d 417, disapproved on other grounds in *Adams* v. *Murakami* (1991) 54 Cal.3d 105, 116 [284 Cal.Rptr. 318, 813 P.2d 1348], the court stated in dictum that only the UIPA prohibits anticompetitive behavior by an insurer, citing *Greenberg*. (229 Cal.App.3d at p. 432.) There, however, the court acknowledged that because *Moradi-Shalal* had only limited retroactivity, the case was governed by *Royal Globe*. (229 Cal.App.3d at p. 426, fn. 1.) The actual holding was that the statute of limitations did not bar the section 790.03 cause of action stated by the plaintiff.

*Maler* v. *Superior Court* (1990) 220 Cal.App.3d 1592 [270 Cal.Rptr. 222] affords no more support to defendants. The opinion does not mention either *Chicago Title* or *Greenberg*, holding only that the adoption of sections 1861.03 and 1861.10 as part of Proposition 103 at the November 8, 1988, election did not restore or create private causes of action under section 790.03.[12]

Nor has this court, or any other, accepted defendants' argument that the UIPA exempts insurance companies from other state antitrust laws or from civil liability for anticompetitive conduct.[13] The act itself contains no such exemption and, in the only case in which this court has considered that question, we held that the insurance industry is not exempt from Cartwright Act claims. (*Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 45-46 [172 P.2d 867].) As the Court of Appeal recognized, *Royal Globe* and *Greenberg* recognized such liability, holding only that the statutory authority for a civil action was found in the UIPA, not the Cartwright Act. We have since held in *Moradi-Shalal*, *supra*, 46 Cal.3d 287, 304-305, that neither section 790.03 nor section 790.09 creates the basis for a private cause of action, but that insurance companies do have civil liability for such conduct. The Court of Appeal below correctly understood that "*Moradi-Shalal* marks a return to the fundamental principle that the UIPA, like all statutes, is to be applied according to its terms. Its language neither creates new private rights *nor destroys old ones*. This was the view of Justice Richardson[] [who, in his

---

[12]Contrary to defendants' assertion, *Maler* v. *Superior Court*, *supra*, 220 Cal.App.3d 1592, did not uphold the sustaining of a demurrer to a UCA cause of action. The trial court had overruled that demurrer (*id.* at p. 1596) and the only issue before the *Maler* court was whether the court erred in sustaining a demurrer to a cause of action for violation of section 1861.03, the section added by Proposition 103 which states that the insurance industry is subject to antitrust and unfair business practices laws. (220 Cal.App.3d at p. 1595.)

[13]Defendants appear to argue both that the insurance industry is exempt from antitrust regulation generally and that no private civil remedy for such conduct exists.

dissent,] wrote that section 790.09 'preserves *any* preexisting civil or criminal liability which the insurer might face under *other statutory or decisional law*.' (*Royal Globe, supra*, 23 Cal.3d at p. 893 . . .)." This court did not, as defendants argue, hold in *Moradi-Shalal* that insurers are subject to common law, but not statutory, civil liability for anticompetitive activities and unfair business practices. We said, with respect to third parties and insured who had no cause of action under section 790.03 *for bad faith refusal to settle*: "[C]ourts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as fraud, infliction of emotional distress, and (as to the insured) either breach of contract or breach of the implied covenant of good faith and fair dealing." (*Moradi-Shalal, supra*, 46 Cal.3d 287, 304-305.) Bad faith refusal to settle is not conduct encompassed by the Cartwright Act. Whether statutory causes of action under the Cartwright Act and the UCA may be stated against an insurance company was not an issue in *Moradi-Shalal* which, in the context of bad faith refusal to settle claims, overruled *Royal Globe Ins. Co., supra*, 23 Cal.3d 880, and confirmed that section 790.03, subdivision (h), was not the source of a private right of action against an insurer for that conduct.

Addressed in this context, defendants' argument that stare decisis principles mandate adherence to *Chicago Title* must fail. First and foremost, *Chicago Title* did not hold that the UIPA supersedes and displaces the Cartwright Act and UCA prohibitions on anticompetitive activities and unfair business practices by insurers. Second, we have never held that the insurance industry is exempt from antitrust and unfair competition laws or that it enjoys immunity from civil liability for such conduct. Finally, even were we to accept defendants' argument that the UIPA and section 790.03 supplant the Cartwright Act and UCA, and assuming *Chicago Title* could be read as holding that section 790.09 permits only administrative sanctions for anticompetitive activities and unfair business practices proscribed by the UIPA, principles of stare decisis would not preclude reconsideration of that conclusion.

Subdivision (c) of section 790.03 includes among the unfair methods of competition and unfair and deceptive acts or practices in the business of insurance it describes: "Entering into any agreement to commit, or by any concerted action committing, any act of boycott, coercion or intimidation resulting in or tending to result in unreasonable restraint of, or monopoly in, the business of insurance." This broad prohibition of anticompetitive activities and unfair business conduct alone demonstrates that defendants may not claim justifiable reliance on a right to engage in such unlawful conduct. A

belief that only administrative sanctions are available to deter or punish such conduct is not equivalent to a justifiable belief that the conduct is permissible. Thus, defendants have no basis for arguing that under their interpretation of *Chicago Title,* they were free to engage in concerted action that tended to result in an unreasonable restraint of trade.

"[T]he doctrine of stare decisis 'is based on the assumption that certainty, predictability and stability in the law are major objectives of the legal system; i.e., that parties should be able to regulate their conduct and enter into relationships with reasonable assurance of the governing rules of law.' (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 758, p. 726, and see cases cited.)" (*Moradi-Shalal, supra,* 46 Cal.3d 287, 296.) Even if defendants believed the Cartwright Act and UCA did not apply to an insurer, however, they would be bound to conform their conduct to the UIPA. That law mirrors the Cartwright Act's prohibition of boycotts and other forms of unfair and anticompetitive conduct. Therefore, defendants will not be heard to complain that they should not suffer civil liability because they lacked "reasonable assurance of the governing rules of law." In essence, their claim is that they believed they could violate the law and be subject only to sanctions imposed by the Insurance Commissioner. Principles of stare decisis do not protect a person from the consequences of actions based on such a belief.

D. *Proposition 103.*

Defendants argue that legislation subsequent to *Chicago Title* has "ratified" the rule that the UIPA supplants the Cartwright Act. They reason that the addition of section 1861.03, subdivision (a), to the Insurance Code implies that prior to the adoption of Proposition 103 the insurance industry was exempt from antitrust regulation other than that of the Insurance Code. That subdivision provides: "The business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to, the Unruh Civil Rights Act (Sections 51 to 53, inclusive, of the Civil Code), and the antitrust and unfair business practices laws (Parts 2 (commencing with Section 16600) and 3 (commencing with Section 17500) of Division 7 of the Business and Professions Code)."

Clearly, Proposition 103 was intended to terminate an insurance industry antitrust exemption. That intent is manifest in section 1861.03, subdivision (a), and in the ballot materials provided to the voters. The Legislative Analyst stated in his analysis that "[t]he measure makes insurance companies subject to the state's antitrust laws." In the ballot pamphlet argument in favor of Proposition 103 and in rebuttal to the counterargument, proponents

of Proposition 103 stated that the measure "will also end the insurers' exemption from the antimonopoly laws, . . ." and that it "eliminates the insurance industry's unfair exemption from the antitrust laws." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters Gen. Elect. (Nov. 8, 1988) argument in favor of Prop. 103, pp. 100-101, 140.)

However, Proposition 103 also repealed former sections 1853, 1853.6, and 1853.7 of the Insurance Code. Those sections were part of the McBride-Grunsky Act, which was enacted after this court held in *Speegle* v. *Board of Fire Underwriters, supra*, 29 Cal.2d 34, that the Cartwright Act applied to the insurance industry; they created a partial antitrust exemption applicable only to certain property and casualty lines of insurance.[14] The McBride-Grunsky Act permitted casualty insurers to engage in rate-setting practices that, but for statutory authorization, would have violated antitrust law. Therefore, the declaration of purpose in section 1861.03, subdivision (a), and the ballot pamphlet statements may reflect nothing more than an intent to terminate the partial antitrust exemption granted to those lines of property and casualty insurance. They do not necessarily reflect a belief that other lines of insurance enjoyed a similar exemption, or that the McBride-Grunsky Act had exempted even property and casualty lines from all aspects of antitrust and unfair competition laws.

Moreover, even assuming that section 1861.03 did reflect a belief on the part of the drafters of Proposition 103 and the electorate that the Cartwright Act and UCA were not applicable to the insurance industry, that belief would be irrelevant. The addition of section 1861.03, subdivision (a), to the Insurance Code cannot ratify or supply what is not present in the prior law.

Proposition 103 does not apply to several lines of insurance, among which is life insurance. (§ 1861.13.)[15] We need not decide if the drafters intended subdivision (a) of section 1861.03 to apply to all aspects of the insurance industry, however, as there is no way that Proposition 103 can be construed as creating an exemption from antitrust laws for those lines of insurance to which its other provisions do not apply.

[14]Section 1851 excludes eight categories of insurance from the partial antitrust exemption conferred by the McBride-Grunsky Act. Life insurance is among the excluded lines. The others are: reinsurance, marine, title, disability, workers' compensation, mortgage, and county mutual fire insurance.

[15]Section 1861.13: "This article shall apply to all insurance on risks or on operations in this state, except those listed in Section 1851."

Section 1851, like section 1861.13, is part of chapter 9 of division 1 of the Insurance Code, a chapter directed to rates and rating.

## IV

*Unfair Competition Act*

Relying on this court's decision in *Rubin* v. *Green* (1993) 4 Cal.4th 1187, 1201-1202 [17 Cal.Rptr.2d 828, 847 P.2d 1044], the Court of Appeal held that, because section 790.03 does not create a private civil cause of action, plaintiff could not plead around that limitation by relying on conduct which violates only the UIPA as the basis for a UCA cause of action. It held, however, that the trial court had properly overruled defendants' demurrers to the UCA cause of action because the conduct on which plaintiff predicated that cause of action also violated the Cartwright Act. Therefore, the conduct could form the basis for a cause of action under the UCA.

Defendant contends that this holding will "seriously compromise" our holding in *Moradi-Shalal* that there may be no private UIPA cause of action under section 790.03.

The question the court addressed in *Rubin* v. *Green, supra,* 4 Cal.4th 1187, was whether allegedly improper solicitation by an attorney, which could not form the basis of a tort action because the conduct fell within the litigation privilege of Civil Code section 47, subdivision (b), could be the basis of an action for injunctive relief under the UCA. Plaintiff's theory was that the conduct could do so as it was prohibited by Business and Professions Code sections 6152 and 6153. Therefore, it was a species of "unfair competition" as to which, under Business and Professions Code section 17204, plaintiff, acting in the interests of the general public, had standing to seek an injunction.[16]

The court held that the plaintiff could not plead around the absolute bar to relief created by the litigation privilege by recasting the cause of action as one for unfair competition. It analogized such pleading to the attempts to avoid the bar to "implied" private causes of action under section 790.03, which several Courts of Appeal had held could not be avoided by characterizing the claim as one under the UCA. (See *Safeco Ins. Co.* v. *Superior Court* (1990) 216 Cal.App.3d 1491 [265 Cal.Rptr. 585]; *Maler* v. *Superior Court, supra,* 220 Cal.App.3d 1592; *Industrial Indemnity Co.* v. *Superior Court*

---

[16]Business and Professions Code section 17204, a part of the UCA, provides that an action for an injunction against unfair competition may be prosecuted by, among others, "any person acting for the interests of itself, its members or the general public."

(1989) 209 Cal.App.3d 1093 [257 Cal.Rptr. 655]; *Lee* v. *Travelers Companies* (1988) 205 Cal.App.3d 691, 694-695 [252 Cal.Rptr. 468]; *Doctors' Co. Ins. Services* v. *Superior Court* (1990) 225 Cal.App.3d 1284, 1289 [275 Cal.Rptr. 674]; *American Internat. Group, Inc.* v. *Superior Court* (1991) 234 Cal.App.3d 749, 768 [285 Cal.Rptr. 765].)

As the Court of Appeal here recognized, however, a cause of action for unfair competition based on conduct made unlawful by the Cartwright Act is not an "implied" cause of action which *Moradi-Shalal* held could not be found in the UIPA. There is no attempt to use the UCA to confer private standing to enforce a provision of the UIPA. Nor is the cause of action based on conduct which is absolutely privileged or immunized by another statute, such as the litigation privilege of Civil Code section 47, subdivision (b).

This conclusion does not compromise the rule of *Moradi-Shalal* in any way. The court concluded there that the Legislature did not intend to create new causes of action when it described unlawful insurance business practices in section 790.03, and therefore that section did not create a private cause of action under the UIPA. The court did not hold that by identifying practices that are unlawful in the insurance industry, practices that violate the Cartwright Act, the Legislature intended to bar Cartwright Act causes of action based on those practices. Nothing in the UIPA would support such a conclusion. The UIPA nowhere reflects legislative intent to repeal the Cartwright Act insofar as it applies to the insurance industry, and the Legislature has clearly stated its intent that the remedies and penalties under the UCA are cumulative to other remedies and penalties.[17]

V

*Disposition*

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Kennard, J., Arabian, J., George, J., and Werdegar, J., concurred.

---

[17]Business and Professions Code section 17205: "Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state."

**MOSK, J.**—I concur in the judgment.

I also generally concur in the majority opinion prepared by Justice Baxter. Its reasoning is substantially sound. Its result is unquestionably correct. On two points, however, I would take a different approach.

I

First, unlike the majority, I would declare that the statement in *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 322-323 [70 Cal.Rptr. 849, 444 P.2d 481] (hereafter sometimes *Chicago Title*), is dictum, not holding, and unsound dictum at that. As the majority themselves clearly show, this language has caused mischief in the past. It should not be allowed to retain any vitality for the future.

"The Cartwright Act," stated the *Chicago Title* court, "is similar in spirit and substance to that federal legislation encompassed by the Sherman (15 U.S.C.A. §§ 1-7) and Clayton Acts (15 U.S.C.A. §§ 12-27). Private individuals, businesses or corporations have, in the absence of express statutory authority, no standing to enforce such regulatory statutes. (Cf. *Show Management* v. *Hearst Publishing Co.*, 196 Cal.App.2d 606, 612-616 [16 Cal.Rptr. 731]; *West Coast Poultry Co.* v. *Glasner*, 231 Cal.App.2d 747 [42 Cal.Rptr. 297]; *Hudson* v. *Craft*, 33 Cal.2d 654 [204 P.2d 1, 7 A.L.R. 696].) The Cartwright Act however follows federal policy which expressly contemplates private civil litigation based upon statutes regulating antitrust and unfair trade practices, including illegitimate pricing practices. (Bus. & Prof. Code, §§ 17040-17051 [*sic*: these provisions belong to the Unfair Practices Act, *not* the Cartwright Act].)

"These statutes and the common law which once constituted the 'protection of the public against combinations in restraint of the insurance trade' (*Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34, 45 [172 P.2d 867]) *are now expressly superseded and contravened by the specific provisions of the Insurance Code.* Counts three (secret rebate), four (discriminatory pricing) and seven (unlawful rebate) clearly concern the regulation of rates charged by title insurers and title companies, and rate regulation has traditionally commanded administrative expertise applied to controlled industries. (Ins. Code, §§ 12404-12412; *County of Placer* v. *Aetna Cas. etc. Co.*, 50 Cal.2d 182 [323 P.2d 753]; *Division of Labor Law Enforcement* v. *Moroney*, 28 Cal.2d 344 [170 P.2d 3].) Count three, for instance, is based upon a statute

(Bus. & Prof. Code, § 17045) aimed at preventing a distributor from discriminating between customers, but fails to allege facts from which a court might properly infer that the prices charged by Security [a title insurer defendant] or Summit [a title company defendant] differ from customer to customer, and is thus defective. (*Federal Automotive Services* v. *Lane Buick Co.*, 204 Cal.App.2d 689 [22 Cal.Rptr. 603].) Count four, presumably based on the same facts, charges that the discount constitutes a sale of title insurance below cost which is an infraction only if done 'for the purpose of injuring competitors' (Bus. & Prof. Code, §§ 17043, 17049), but a court is not the appropriate initial arbiter of factors involved in insurance costs. Count seven implies that Sherwood (an escrow company [defendant]) acts as 'agent' for real property owners with whom title insurers and title companies are prohibited from splitting fees and that because Summit is controlled by identical interests, the receipt of a title policy from Security at a discount constitutes an illegal rebate (Ins. Code, § 12404) to Sherwood. The statutory framework, however, specifically contemplates a division of fees between title insurers and title companies which shall be proper unless the method used constitutes such fee divisions 'illegal.' (Ins. Code, §§ 12412, 12404.5, 12405.7.) It is not clear from the facts alleged that the discount rendered would or should be considered illegal by the insurance commissioner, or that the practice of extending secret rebates or engaging in unreasonably low or discriminatory pricing policy is followed by the defendants, or any of them.

"[T]he factual allegations, as illustrated, fail in each instance to support the charge. Just as the earlier counts state facts insufficient to establish proscribed conduct on the parts of the alleged actors and thus cannot reach their purported conspirators, so the final counts charging antitrust infringements fall for similar reasons." (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.*, *supra*, 69 Cal.2d at pp. 322-323, italics added and brackets without enclosed material deleted.)

In my view, *Chicago Title*'s statement is dictum, indeed unsound dictum. On this point, I adopt the analysis that Justice Benson set out in his opinion for the Court of Appeal below, which I quote in full.

"Defendants' challenge to the Cartwright Act claims ultimately rests on a single sentence in *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 322 [70 Cal.Rptr. 849, 444 P.2d 481]: 'These statutes and the common law which once constituted "the protection of the public against combinations in restraint of the insurance trade" (*Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34, 45 [172 P.2d 867]) are now expressly superseded and contravened by the specific provisions of the Insurance

Code.' After scrutinizing this statement in context, we have concluded that *Chicago Title* is neither compelling nor persuasive authority for a rule holding the Cartwright Act superseded by the [Unfair Insurance Practices Act or] UIPA.

"The quoted statement is dictum. Dictum is the 'statement of a principle not necessary to the decision.' (*People* v. *Squier* (1993) 15 Cal.App.4th 235, 240 [18 Cal.Rptr.2d 536], internal quotation marks omitted.) The *holding* of *Chicago Title* is that the complaint failed to adequately plead the elements of a Cartwright Act cause of action, or any other claim. The court undertook a painstaking count-by-count analysis of the complaint, identifying numerous factual and legal deficiencies.[1] If the Supreme Court had believed that the statutes cited by the plaintiffs (including the Cartwright Act) were superseded by the Insurance Code, there would have been no occasion for this discussion. But the court explicitly identified factual insufficiency as the 'determinative' issue.[2]

"Dictum, of course, is not controlling authority even when it emanates from the Supreme Court. (*Grange Debris Box & Wrecking Co.* v. *Superior Court* (1993) 16 Cal.App.4th 1349, 1358 [20 Cal.Rptr.2d 515]; cf. *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 734-735 [257 Cal.Rptr. 708, 771 P.2d 406].) Nonetheless it 'carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic.' (*Grange, supra*, at p. 1358 . . . .) *Chicago Title*'s statement concerning Insurance Code exclusivity satisfies neither of these requirements.

"Like most of the opinion in *Chicago Title*, the quoted statement was authored by a Court of Appeal and 'adopted' by the Supreme Court. (69

---

[1]"For example: 'We are persuaded . . . that appellants' vague and conclusionary pleadings fail to allege facts which might reasonably be construed to reveal a wrongful combination.' (*Chicago Title Ins. Co.* v. *Great Western Financial Corp., supra,* 69 Cal.2d at p. 315.)
" '[T]he factual allegations, as illustrated, fail in each instance to support the charge. Just as the earlier counts state facts insufficient to establish proscribed conduct on the parts of the alleged actors and thus cannot reach their purported conspirators, so the final counts charging antitrust infringements fall for similar reasons.' (69 Cal.2d at p. 323, brackets original.)
" 'The allegation of boycott cannot be supported in this instance because everyone has the unrestricted right to select customers and sources of supply.' (69 Cal.[2]d at p. 324.)"

[2]" 'We must determine . . . whether the superior court has jurisdiction to entertain an action based upon appellants' theories, or any of them, and, if so, whether appellants have stated a cause of action against any of the various named defendants. *The latter finding, which is determinative,* is in the negative.' (*Chicago Title Ins. Co.* v. *Great Western Financial Corp., supra,* 69 Cal.2d at p. 313, italics added.)"

Cal.2d at p. 311.) This in itself does not warrant lessened deference, but the statement also betrays a certain lack of authorial attention. To begin with, it confuses the Cartwright Act with the [Unfair Practices Act]. The subject dictum is immediately preceded by a citation to Business and Professions Code sections 17040-17051. (69 Cal.2d at p. 322.) These statutes are part of the [Unfair Practices Act] and not, as the author of the dictum seemed to believe, the Cartwright Act. (See *ibid.*; cf. *id.* at pp. 315, 322 [correctly defining 'Cartwright Act']; Food & Agr. Code, §§ 66524, 65521 [same]; *Speegle* v. *Board of Fire Underwriters* [(1946)] 29 Cal.2d [34,] 42 [172 P.2d 867] [same]; cf. Bus. & Prof. Code, § 17000 [defining 'Unfair Practices Act'].) The statement that 'these statutes' have been superseded by the Insurance Code is thus burdened with a glaring anomaly.

"Moreover, the court never identified *any* provision of the Insurance Code which '*expressly* superseded and contravened' *any* other statute. In particular, *the opinion never mentioned the UIPA*. Instead it cited certain provisions of the Insurance Code involving the regulation of *title insurance rates*. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.*, *supra*, 69 Cal.2d at pp. 322-323, citing Ins. Code, §§ 12404-12412.) None of those provisions could be said to 'expressly abrogate' any other statute. Indeed, some five years later the Legislature *did* enact an express exemption covering some of the activities authorized by the cited portion of the code. (Ins. Code, § 12414.26, added by Stats. 1973, ch. 1130, § 15, p. 2314.) The absence of such a statute in 1968 renders the *Chicago Title* dictum nearly unintelligible. Certainly the Legislature could not have given that case the meaning defendants do, or it would not have bothered to enact the cited statute.

"The two paragraphs immediately following the subject dictum suggest that three of the complaint's eleven counts might intrude upon the commissioner's jurisdiction over title insurance rates. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.*, *supra*, 69 Cal.2d at pp. 322-323.) None of these three counts invoked the Cartwright Act. We note sharp historical and analytical distinctions between the regulation of rate-setting practices and the broad prohibitions in the UIPA. (See *Karlin* v. *Zalta* [(1984)] 154 Cal.App.3d [953,] 973-977.)

"The court thus seemed to say no more than that *part* of the complaint *might* intrude upon regulatory turf. Even with respect to that part of the complaint, however, the court ultimately returned to its *holding*, declaring that the factual allegations under scrutiny 'fail in each instance to support the charge' and that the counts discussed to that point 'state facts insufficient to establish proscribed conduct.' (*Chicago Title Ins. Co.* v. *Great Western*

*Financial Corp., supra*, 69 Cal.2d at p. 323.) The court only then turned to claims having any bearing here, declaring that '. . . the final counts charging antitrust infringements fall for similar reasons.' (*Ibid.*) On the next page, the Supreme Court itself inserted a declaration that the Cartwright Act counts failed 'because plaintiffs' vague and conclusionary pleadings fail to allege sufficient facts.' (*Id.* at p. 324.)

"It thus appears that the subject dictum means *at most* that the three claims concerning rates were repugnant, or potentially repugnant, to the 'specific provisions of the Insurance Code' concerning rate setting. The allusion to the *Speegle* case, and thus apparently to the Cartwright Act, was not only dictum, but unsound." (Fn. omitted.)

II

Second, I consider somewhat differently from the majority the question whether the Unfair Insurance Practices Act, codified as article 6.5, commencing with section 790, of chapter 1 of part 2 of division 1 of the Insurance Code, supersedes other law, statutory and decisional, that may be applicable to trade practices in the business of insurance.

The source of the Unfair Insurance Practices Act is, obviously, the Model Unfair Trade Practices Act drafted by the National Association of Insurance Commissioners. The source of the Model Unfair Trade Practices Act is the Federal Trade Commission Act, codified at section 41 et seq. of title 15 of the United States Code. Indeed, the model act "is patterned very closely after" the federal act "and much of the language was lifted bodily" therefrom. (2 Proceedings of the National Association of Insurance Commissioners (1971) p. 345.)

Let us return to the Unfair Insurance Practices Act itself. Insurance Code section 790 declares that "[t]he purpose of" the act "is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the Act of Congress of March 9, 1945 (Public Law 15, Seventy-ninth Congress), by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." The congressional act referred to is popularly known as the McCarran-Ferguson Act, codified at section 1011 et seq. of title 15 of the United States Code, which in its section 2(b), section 1012(b) of title 15 of the United States Code, makes "the Sherman Act, . . .

the Clayton Act, and . . . the Federal Trade Commission Act . . . [in]applicable to the business of insurance to the extent that such business is . . . regulated by State law."

It seems clear that the Unfair Insurance Practices Act was not *intended* to supersede other law, statutory and decisional, that might be applicable to trade practices in the business of insurance. The majority are right to impliedly approve the reasoning of Justice Benson in his opinion for the Court of Appeal below: The Unfair Insurance Practices Act "was enacted pursuant to the authority of the McCarran-Ferguson Act . . . in order to displace federal law which might otherwise have governed insurance trade practices, displacing the law of any state which did not generally proscribe the same industry conduct. In so doing the Legislature did not intend to shield the industry from otherwise applicable state law." (Maj. opn., *ante*, at p. 266, fn. omitted.)

Less clear, however, is whether the Unfair Insurance Practices Act *has the effect* of superseding other law, statutory and decisional, that may be applicable to trade practices in the business of insurance. Evidently, to use the language of Insurance Code section 790, the act "defin[es], or provid[es] for the determination of, *all* . . . [trade practices in the business of insurance] in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and . . . prohibit[s] the trade practices so defined or determined." (Italics added.) In so doing, it constitutes a comprehensive statutory scheme governing trade practices in the business of insurance. (*American Intern. Group, Inc.* v. *Superior Court* (1991) 234 Cal.App.3d 749, 764 [285 Cal.Rptr. 765].) Such a scheme may supersede the otherwise applicable common law. (E.g., *I.E. Associates* v. *Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285 [216 Cal.Rptr. 438, 702 P.2d 596].) It may supersede the otherwise applicable statutory law as well.

Weighing all in the balance, however, I believe that the Unfair Insurance Practices Act does *not* have the effect of superseding other law, statutory and decisional, that may be applicable to trade practices in the business of insurance. A supersessive effect should be found if and only if the act may be considered a substitute for such other law. (See *Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 176 [74 P.2d 252].) The condition is not satisfied. The act sets up a regime of direct regulation by public actors through administrative proceedings of various sorts. By contrast, the otherwise applicable law allows "indirect regulation" by both private and public actors through both civil and criminal actions. There is no basis to conclude that the former is a substitute for the latter.

In view of the foregoing, I find it unnecessary to rely on Insurance Code section 790.09. Because I find it unnecessary, I would not do so.

Unlike the majority, I cannot discern in Insurance Code section 790.09 what they have impliedly discovered, namely, an "*intent* to preserve existing rights and remedies for unlawful business practices in the insurance industry." (Maj. opn., *ante*, at p. 266, italics added.) The provision declares: "No order to cease and desist issued under" the Unfair Insurance Practices Act "directed to any person or subsequent administrative or judicial proceeding to enforce the same shall in any way relieve or absolve such person from any administrative action against the license or certificate of such person, civil liability or criminal penalty under the laws of this State arising out of the methods, acts or practices found unfair or deceptive." The provision merely imposes a bar against defensive collateral estoppel—stating only that an administrative cease-and-desist order issued against a person on a finding that he has engaged in unfair or deceptive conduct does not "relieve or absolve" him from any administrative action, civil liability, or criminal penalty arising out of the conduct in question. The proximate source of Insurance Code section 790.09 is section 8(d) of the Model Unfair Trade Practices Act: "No order of the Commissioner under this Act or order of a court to enforce the same shall in any way *relieve or absolve* any person affected by such order from any liability under any other laws of this state." (Italics added.) The ultimate source of Insurance Code section 790.09 is section 5 of the Federal Trade Commission Act, section 45(e) of title 15 of the United States Code: "No order of the Commission or judgment of court to enforce the same shall in anywise *relieve or absolve* any person, partnership, or corporation from any liability under the Antitrust Acts." (Italics added.) *That* provision, in fact, merely imposes a bar against defensive collateral estoppel. (See, e.g., *State of N.C.* v. *Chas. Pfizer & Co., Inc.* (4th Cir. 1976) 537 F.2d 67, 74; *United States* v. *Chas. Pfizer & Co.* (S.D.N.Y. 1962) 205 F.Supp. 94, 96-97.)

I hasten to add that, although I cannot discern in Insurance Code section 790.09 an "*intent* to preserve existing rights and remedies for unlawful business practices in the insurance industry" (maj. opn., *ante*, at p. 266, italics added), I nevertheless find therein an *assumption* that such "existing rights and remedies" are indeed "preserved." The provision imposes a bar against defensive collateral estoppel that is broad, extending beyond administrative proceedings to civil and criminal actions. Administrative proceedings belong to the regime of direct regulation set up by the Unfair Insurance Practices Act. Civil and criminal actions, in contrast, belong to the regime of "indirect regulation" allowed under otherwise applicable law. The provision

recognizes the survival of those actions. It thereby presupposes the perdurance of that law.

## III

With all that said, I concur in the judgment, and also generally concur in the majority opinion.